FIDELITY & DEPOSIT COMPANY OF MARYLAND
*v.* STORDAHL.

1. Trusts—Constructive Trust—Embezzling Bank Teller—Innocence of Wife.

Trial court's finding, that defendant wife of embezzling bank teller was innocent of any wrongdoing, made in suit by bondsmen to impress constructive trust upon real and personal property, *held,* fully sustained by the record.

2. Same—Misapplied Funds—Investment—Claim of Third Persons.

Money misapplied by the trustee and traced into an unauthorized investment in property of any nature may be treated by the *cestui que trust* as made for his benefit, in the absence of a claim of bona fide ownership by a third person.

References for Points in Headnotes
[2, 3]  54 Am Jur, Trusts § 245.
[4]  54 Am Jur, Trusts § 622..
[5]  26 Am Jur, Husband and Wife § 66 *et seq.*

3. SAME—MISAPPLIED FUNDS—TITLE IN THIRD PARTY.

  Property purchased by misapplied trust funds, title to which
  is taken in the name of any other person than a bona fide
  holder for value, may be seized upon as the property belong-
  ing to the trust irrespective of whether it has increased or
  decreased in value.

4. SAME—MISAPPLIED FUNDS—TRACING—EVIDENCE.

  To justify a finding that the subject matter of an alleged con-
  structive trust was exclusively acquired through utilization of
  misapplied trust funds, fair certainty of tracing such funds
  into the exact property in question must be testimonially es-
  tablished, and where the rights of an innocent third person
  are involved, it is not enough to prove, or to infer circumstan-
  tially from proof, that *some undetermined portion* of the mis-
  applied funds was used to acquire *some unidentified portion* of
  property, in order to obtain a decree bringing *all such prop-
  erty* within the trust assets.

5. HUSBAND AND WIFE—TENANCY BY ENTIRETY.

  Property is not acquired by a husband and wife by the entirety
  when the circumstances are such as to prevent either from
  being seised of the whole, but both hold by distinct titles.

6. TRUSTS—CONSTRUCTIVE TRUST—BANK INDEMNITORS—EMBEZZLER'S
   WIFE—EVIDENCE.

  Evidence presented in bank indemnitors' suit to impress con-
  structive trust upon property acquired by embezzling bank
  teller and his wife, purportedly as tenants by the entireties,
  *held*, insufficient to show that any bank funds were used in the
  purchase of 2 adjacent vacant lots, but sufficient to show that
  innocent wife contributed portions of the down payment for
  the lot improved by a house and by payments made on the
  mortgage since she was employed outside of the home as well
  as by various improvements she made by her own efforts
  during period when bank moneys were used in making mortgage
  payments, hence, the plaintiffs and defendant wife are each
  awarded an undivided 1/2, with the plaintiffs and defendant
  wife equally obligated to retire the balance of the purchase
  money mortgage as it stood at time of trial below.

Appeal from Wayne; Quinn (Timothy C.), J., pre-
siding. Submitted April 8, 1958. (Docket No. 11,
Calendar No. 47,022.) Decided July 15, 1958.

Bill by Fidelity & Deposit Company of Maryland, a Maryland corporation, and 5 other bonding companies, against Calmar M. Stordahl and Grace A. Stordahl to impress constructive trust on real and personal property to apply as payment on obligation arising from husband's embezzlement. Decree for plaintiffs. Reversed in part and remanded.

*Crawford, Sweeney, Dodd & Kerr* (*J. Cameron Hall* and *Robert G. Russell*, of counsel), for plaintiffs.

*Capizzi, Valenti & Kwetcher*, for defendants.

BLACK, J. The plaintiff fidelity insurers, having duly succeeded to the presently unveiled rights of the Commonwealth Bank of Detroit, filed this bill for declaration of a constructive trust and related relief against defendants Calmar M. Stordahl and Grace A. Stordahl, husband and wife. The chancellor, following trial of issues made by the bill and separate answers filed by Mr. and Mrs. Stordahl, entered a decree vesting title to 3 lots (comprising in all the home premises of Mr. and Mrs. Stordahl) in plaintiffs as designated tenants in common and as beneficiaries of a trust identifying Mr. Stordahl as trustee *ex maleficio*. By the decree plaintiffs were required to pay Mrs. Stordahl the total sum of $1,293.12, representing decree-determined payments made by her (from her own earnings following Mr. Stordahl's arrest in 1951) toward retirement of the home purchase money mortgage. In addition to the 3 lots, plaintiffs by the decree were awarded title to an automobile of the defendants and 26 shares of the capital stock of the bank, which stock theretofore was owned by Mr. and Mrs. Stordahl and valued (in the decree) at the sum of $4,524. Other lesser items of personal property were similarly awarded to plaintiffs.

For many years Mr. Stordahl was a teller, and later an officer, of the bank. Between 1933 and the date of what is known in the record as his confession,* Mr. Stordahl embezzled funds of the bank amounting net to $130,313.07. Mrs. Stordahl had no knowledge of her husband's conduct in such regard. The chancellor's finding, of innocence on her part, is fully sustained by the record. Evidence was adduced tending to show that the "defalcation was wasted on horse racing and other forms of gambling." The chancellor found, as against such proof, that Mr. and Mrs. Stordahl did not, during the presently described period of home-acquisition, have sufficient funds with which to live and at the same time acquire "some of these assets" without making use of "part of the embezzled money." Accordingly, and having found circumstantially that the 3 lots in fact were purchased by and with misappropriated funds of the bank, the chancellor in appropriate terms constructed the trust outlined above.

We are concerned here only with Mrs. Stordahl's claimed rights and interests in and to the mentioned real estate. It is said that the testimonial record does not sustain outright award thereof to plaintiffs, over and above the lien so granted her. Such is the issue we are asked to resolve—an issue which turns more on evidentiary facts than a controlling point or points of law.

The Stordahl home was originally constructed on lot 3038 (of the designated subdivision) by a Dr. Madison. The Stordahls became tenants of the home in 1937. They negotiated at the time for its purchase, only to find that Dr. Madison, although willing to

---

* The instrument, written on a date and memo sheet of a calendar (the date being August 21, 1951), reads as follows:

"This is to certify that all my ill doings are my own. The staff or no one else new about any of my transactions or assisted me in know way. God spare my wife and child.

/s/ C. M. STORDAHL"

sell, was unable to do so on account of pending marital trouble. It appears without dispute that the Stordahls orally arranged with Dr. Madison at the time that they "would have the first opportunity to buy it" when the doctor was ready to sell and, by further arrangement, that the Stordahls would be allowed to make repairs and improvements with purchase in mind as they remained tenants. The Stordahls ultimately purchased (by warranty deed naming them as tenants by entirety) said lot 3038 in August of 1945, having previously purchased from separate grantors adjacent and vacant lots 3039 and 3040. The purchase of lot 3038 was for the stated consideration of $8,100,* $2,100 of which was paid down with the remainder financed by a purchase money mortgage in the sum of $6,000. The 3 lots are now, by finding and order below, valued at the sum of $24,500.

*First:* This Court, having declared itself unequivocally in *Massachusetts Bonding & Insurance Co.* v. *Josselyn,* 224 Mich 159, is firmly committed to these rules:

"Where money held upon trust is misapplied by the trustee and traced into an unauthorized investment in property of any nature, the investment thus made, in the absence of a claim of bona fide ownership by a third person, may be treated by the *cestui que trust* as made for his benefit. The consideration for the investment is trust money and the beneficiary of the trust becomes the equitable owner of the property purchased therewith. His right is a property right, not one created by a court of equity, and if such money has been used in the purchase of real estate or personal property of any kind, the title of which is taken in the name of any other person except a bona fide holder for value, such property, irrespective

---

* The actual consideration was $9,100, the Stordahls having been allowed, by Dr. Madison, the sum of $1,000 for repairs previously made by them.

of whether it has increased or decreased in value, may be seized upon as the property belonging to the trust" (*Long* v. *Earle,* 277 Mich 505, 525, 526).

Have plaintiffs sustained the burden, exacted by their bill and the rules just quoted, so as to justify a decree awarding them *outright title* to the 3 lots in question? If they have, the required proof must be found in tenuous if not imaginary circumstances. The chancellor said:

"No proof was offered directly tracing any of the embezzled funds into these assets, and probably none was available. There was no proof of commingling of embezzled funds with other funds in a common fund. However, there was proof, which established to the satisfaction of this court, that from 1943 to 1951 the Stordahls did not have sufficient money to live and acquire some of these assets without making use of part of the embezzled money."

To justify a finding that the subject matter of an alleged constructive trust was exclusively acquired through utilization of misapplied trust funds, fair certainty of tracing such funds into the exact property in question must be testimonially established. Further, where the rights of an innocent third person are involved, it is not enough to prove, or to infer circumstantially from proof, that some *undetermined portion* of the misapplied funds was used to acquire some *unidentified portion* of variant types or descriptions of the target property, in order to obtain a decree bringing all such property within the trust perimeter. Here the most one may say for plaintiffs' proofs, as applied to the 3 lots, is that a major part of the total down payment, on the home lot proper, by fair inference came from a then recent peculation of $2,000 rather than from a sale of Investors' Mutual stock (as testified by Mr. Stordahl); that Mrs. Stordahl thereafter and until she resumed work in

1951 had no income in her own right, and that the interim mortgage payments must have come from funds of the bank whether such payments constituted embezzled funds or not; the applicable legal theory being that Mr. Stordahl's salary earned during such interim, belonged—considering his previous and unacquitted embezzlements—to the bank.

All this, considering Mrs. Stordahl's evident interest in the realty subject matter, is insufficient to support the decree as entered below. We proceed:

Mrs. Stordahl, her innocence of wrongdoing established, stands before us clothed with the protection equity provides in favor of all bona fide purchasers of interests in property. It was shown by her testimony, and we find no reason in the record for disbelief thereof, that she contributed $400 from her own funds to the making up of the mentioned down payment. It was shown further, quite without dispute, that Mrs. Stordahl herself did considerable work upon and about the home in the way of permanent improvement thereof. The labor done by her included carpenter work, carrying of cement, laying of tile and assisting in the construction of a fireplace. Work of such nature, to say nothing of the daily toil a dutiful wife and mother contributes to the necessary preservation and maintenance of the family home—without which in this instance it is doubtful that any property would have become available for trust impressment,—is as much an "investment" therein (contending values being equal or substantially so) as is money earned or embezzled by her husband and devoted by him to its acquisition. Equity will no more countenance defeat of this wife's real investment in that home than it will permit frustration of the bank's original and now assigned right to beneficially trace its "invested" funds into the same subject matter. Each has rights, and each is entitled to appeal to the grace of our maxims.

*Second:* We are apt, if not vigilant, to overlook the true status of the defendant husband and the defendant wife when they undertook acquisition by entirety of the home lot. Though they intended otherwise the husband, having utilized the bank's funds for such purpose, received by force of equitable principles an interest in the lot as trustee for the bank. The wife in turn and by the same force received a separate interest. Why did they not become tenants by entirety? Because, "As neither one was seised of the whole, but both held by distinct titles, they could not have been tenants by the entirety" (*Pegg* v. *Pegg,* 165 Mich 228, 230 [33 LRA NS 166, Ann Cas 1912C, 925]). As was held later in *Wright* v. *Knapp,* 183 Mich 656, 658, 659:

"An attempt undoubtedly was made to create an estate in entirety, but it failed, because the formalities of the law were not observed in its creation. *Pegg* v. *Pegg,* 165 Mich 228; * * * *Cameron* v. *Steves,* 9 N Brunswick, 141. This being so, the conveyance must be regarded the same as though made to strangers, and not to man and wife."

Following *Pegg* and *Wright,* it is ruled that Mr. and Mrs. Stordahl became and yet remain tenants in common of the home lot; Mr. Stordahl holding an undivided interest as trustee of and for the plaintiff beneficiaries, and Mrs. Stordahl holding an undivided interest in her own right. As to the separately acquired lots (Nos. 3039 and 3040), we find no evidence supporting a finding that funds of the bank were employed in supplying the comparatively smaller purchase consideration thereof. This brings up the pointedly final question: What is the proportionate interest of the trust beneficiaries on the one hand, and that of Mrs. Stordahl on the other, in and to the home lot (No. 3038)?

Viewing the testimonial record from its 4 corners, and according plaintiffs the unfettered inference that Mr. Stordahl utilized funds of the bank with which to supply $1,700 of the mentioned down payment plus the sum of all mortgage payments made between August of 1945 and the time of his arrest in 1951 (approximately $4,800), we find ourselves unable to say that the invested equity of the one tenant (the trustee) adds to a greater amount than that of the other. One invested funds of the bank aggregating the approximate sum of $6,500. The other invested her own funds totalling $1,693.12 plus the indeterminable value of her labor and about-the-house contribution to upkeep of the home and augmentation of its value. In these circumstances we are constrained to rely upon, and apply to decision of this case, the presumption of equality of contribution by the defendant husband (as trustee) and of the defendant wife individually. This Court did so in the quite similar case of *Newlove* v. *Callaghan,* 86 Mich 297 (24 Am St Rep 123), rehearing 86 Mich 301, and we are disposed to enter the same decree here as was directed on remand of that case.*

Reversed and remanded for entry of decree adjudging the plaintiff beneficiaries to be owners of an undivided 1/2 interest in said lot 3038 and adjudging defendant Grace M. Stordahl owner of an undivided 1/2 interest in the same lot; decreeing that plaintiffs are possessed of no right or interest in and to said lots 3039 and 3040, and determining that plaintiffs collectively on the one hand, and defendant Grace M. Stordahl on the other, shall bear equally the burden

---

* For various declarations and applications of this rebuttable presumption that common estates are presumed to be co-equal, see *Taylor* v. *Taylor,* 310 Mich 541 (157 ALR 559); *Hill* v. *Reiner,* 167 Mich 400; *City of Detroit* v. *Jacobs,* 145 Mich 395; *Michigan Beef & Provision Co.* v. *Coll,* 116 Mich 261; *Eberts* v. *Fisher,* 44 Mich 551, and annotation, 156 ALR 515.

of retiring the balance of the mentioned purchase money mortgage as same stood at the time of trial below, such then balance being $3,850.25. Provisions of the chancellor's decree not affected by this opinion shall remain intact. Costs of this Court to defendants.

DETHMERS, C. J., and CARR, KELLY, SMITH, ED-WARDS, VOELKER, and KAVANAGH, JJ., concurred.