In re the MARRIAGE OF Pamela A. ALLEN, Petitioner,

and

**Roger L. Allen, Respondent;**

**and concerning**

**United Mortgage Company, Intervenor-Respondent.**

**No. 84SC196.**

Supreme Court of Colorado, En Banc.

Sept. 2, 1986.

E. Michael Canges, Nina A. Iwashko, Denver, for petitioner.

No appearance for respondent Roger L. Allen.

Holme Roberts & Owen, Donald K. Bain, Spencer T. Denison, Denver, for intervenor-respondent United Mortg. Co.

LOHR, Justice.

We granted certiorari to review the decision of the Colorado Court of Appeals in *In re Marriage of Allen*, 691 P.2d 749 (Colo. App.1984). In that case, the court of appeals held that United Mortgage Company (UMC) was entitled to impose a construc-

tive trust on some of the property received by Pamela Allen as a result of the dissolution of marriage action involving Pamela Allen and her former husband, Roger Allen. The holding of the court of appeals was based on the facts that prior to the dissolution, Roger Allen had embezzled a large amount of money from UMC and that Pamela Allen had received some of the proceeds of the embezzlement under the terms of the property settlement provisions of the decree of dissolution. The court of appeals remanded the case to the trial court with directions to set aside the permanent orders entered in the dissolution action and to redivide the Allens' property taking into account UMC's interests in that property. We affirm the judgment of the court of appeals.

## I.

Roger Allen and Pamela Allen obtained a decree dissolving their marriage on February 7, 1980. Incorporated into the decree was a stipulation for permanent orders containing the Allens' agreement as to property division, child support, and maintenance. The stipulation provided, among other things, that before March 1, 1980, Pamela would receive from Roger cash payments totaling $93,200. In addition, she was to receive a promissory note from Roger in the amount of $75,000 secured by a deed of trust on the Allens' home (the family home). The note and $75,000 of the cash represented one-half of the equity that had accumulated in the family home as of the time of the dissolution. The remainder of the cash payments represented the value of a fur coat and a Jaguar automobile surrendered by Pamela to Roger. The stipulation further provided that upon receipt of the cash, the promissory note, and the deed of trust, Pamela would convey her interest in the family home to Roger.

In January and February 1980, Roger made the cash payments and gave a secured note to Pamela as provided for in the stipulation. Roger obtained $3,200 of the cash through a loan from a friend. He obtained the remaining $90,000 through a loan from Arapahoe Bank & Trust, secured by a second deed of trust on the family home. On the same day that she received the $90,000, Pamela invested $83,413.02 in a house on Driver Lane in Littleton (Driver Lane residence). She sold the Driver Lane residence on July 9, 1980, and received $89,593.74 as proceeds of the sale. She immediately transferred $75,000 of that money to a bank in Florida. Soon after, Pamela purchased an interest in a home in Florida, spending almost $44,000 to buy the interest and to redecorate the home. Within several months of the purchase, she expended the remaining proceeds of approximately $45,000 that she had received from the sale of the Driver Lane residence.

Meanwhile, in late March 1980, Roger Allen's employer, UMC, discovered that Roger had embezzled $589,823.24 from UMC during 1979 and 1980. In his position as vice-president of UMC in charge of construction lending, Roger was able to write checks on some UMC accounts without obtaining the approval of any other UMC employee. Because Roger wrote the checks primarily on accounts for two projects of which he was in charge, the embezzlement went undetected for more than a year. The trial court found that $190,000 of UMC's money was used to pay for construction of the family home, approximately $40,000 was used to buy furnishings for the home, $13,000 was used to purchase the Jaguar automobile, and $3,200 went to repay the loan that Roger had received from his friend.

Criminal charges were filed against Roger, and UMC also brought a civil action to recover the stolen moneys from Roger. Roger entered into a settlement agreement with UMC pursuant to which he conveyed the family home to UMC. He also filed a post-judgment motion in the dissolution of marriage action, requesting that the trial court set aside the stipulated permanent orders that had been incorporated into the decree of dissolution. In his motion, Roger stated that his financial condition would change substantially as a result of the legal proceedings surrounding the embezzle-

ment, rendering unconscionable the enforcement of the permanent orders. UMC filed a motion to intervene in the dissolution action, and the trial court granted that motion. In its complaint in intervention, UMC asked that the permanent orders be set aside because they were based on a fraudulent misrepresentation of marital assets to the court and because they divided property that belonged to UMC. It further asserted, among other things, that UMC was entitled to a constructive trust and an equitable lien on the Driver Lane residence [1] and to a constructive trust on the promissory note and on the deed of trust on the family home securing that note.

After a hearing, the trial court determined that it would not be proper to reopen the judgment since doing so would directly benefit Roger. It further determined that Pamela was a bona fide purchaser for value and that therefore UMC could not obtain a constructive trust on the promissory note, the deed of trust, or the proceeds of the sale of the Driver Lane residence. UMC appealed this decision, and the court of appeals reversed the judgment of the trial court. The court of appeals held that the provisions of section 18–4–405, 8 C.R.S. (1978), completely disposed of the issues in this case and entitled UMC to impose a constructive trust on any proceeds of the embezzlement that UMC can trace. The court of appeals remanded the case to the trial court with instructions to set aside the previous judgment dividing the Allens' property and to redistribute that property in accordance with the interests of all the parties, including UMC. Although we agree that the judgment must be set aside and the property redivided so as to account for UMC's interests, we do not agree that this result can be based upon section 18–4–405. Accordingly, we affirm the judgment of the court of appeals, but we rely upon a different rationale for doing so.

## II.

■ First we must determine whether the property settlement agreement in this

case may be reopened. Section 14–10–122(1), 6 C.R.S. (1973), establishes the circumstances under which a court may set aside previously entered orders concerning property division. That section states in pertinent part that "[t]he provisions [of a dissolution decree] as to property disposition may not be revoked or modified unless the court finds the existence of conditions that justify the reopening of a judgment." The conditions that justify the reopening of a final judgment include the existence of fraud, misrepresentation, or other misconduct of an adverse party, C.R.C.P. 60(b)(2), and "any other reason justifying relief from the operation of the judgment," C.R.C.P. 60(b)(5).

In the present case, it is undisputed that Roger Allen embezzled several hundred thousand dollars from UMC prior to the dissolution and that as a result, his financial statements, upon which the property division was based, were fraudulent and misrepresented his assets. The trial court recognized that fraud on the court necessitates the reopening of a judgment, but refused to set aside the property division on the grounds that Roger, the fraudulent party, should not be allowed to benefit from his fraud by utilizing the property distributed to Pamela to reduce the restitution obligations imposed on him in other civil and criminal proceedings. The trial court's resolution of the issue, however, ignores the position of UMC as a party to this action. From UMC's perspective, Roger is an adverse party who perpetrated a fraud upon the trial court. The trial court and the parties to the dissolution arrived at the property disposition without regard to any rights or interests that UMC might have had in the property. UMC is entitled to have the judgment set aside regardless of whether Roger also benefits from such an action.

## III.

We next consider the remedies that will be available to UMC on remand. In revers-

---

1. UMC apparently was unaware of the sale of the Driver Lane residence when the complaint in intervention was filed. Later, without amending the pleadings, UMC sought a constructive trust on the proceeds of that sale.

ing the trial court, the court of appeals relied on section 18–4–405, 8 C.R.S. (1978), which states:

All property obtained by theft, robbery, or burglary shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property. The owner may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property. In any such action, the owner may recover three times the amount of the actual damages sustained by him, if any, and may also recover costs of the action and reasonable attorney's fees; but treble damages and attorney's fees shall not be recoverable from a good-faith purchaser or good-faith holder of the property.

According to the court of appeals, this statute entitles UMC "to trace the embezzled funds to their ultimate destination for the purpose of impressing a constructive trust." *In re Marriage of Allen,* 691 P.2d at 751.

Pamela Allen argues that section 18–4–405 is merely a codification of the common law remedy of replevin and thus is not authority for the imposition of a constructive trust. UMC argues that the statute does authorize a court to impose a constructive trust on any portion of Pamela's property that can be traced to the embezzled funds. Neither party is entirely correct.

■ Replevin is a possessory action in which a claimant seeks to recover both possession of personal property that has been wrongfully taken or detained and damages for its unlawful detention. *Metro National Bank v. District Court,* 676 P.2d 19, 22 (Colo.1984); D. Dobbs, *Handbook on the Law of Remedies* § 5.13 at 399–400 (1973). This civil remedy has ancient roots in the common law, but many states have codified the remedy. *See* statutes cited in Dobbs, *Handbook on the Law of Remedies,* § 5.13 at 400 nn. 8–9. Colorado had a statute expressly codifying the law of replevin, found at sections 79–11–1 to –19, 4

C.R.S. (1963), but that statute was repealed in 1964. *See* ch. 45, sec. 73, 1964 Colo.Sess. Laws 409, 436. At that time, the legislature expressed its intent that "[i]n an action for the possession of specific personal property, claim and delivery (replevin) proceedings shall be available to the plaintiff as provided in the Colorado rules of civil procedure." Ch. 45, sec. 52, 1964 Colo. Sess.Laws 409, 427. Accordingly, C.R.C.P. 104 now governs actions for replevin in this state.

■ Section 18–4–405, on the other hand, is part of Colorado's criminal code, and gives no indication that it was intended to be the equivalent of, or a substitute for, the civil remedy of replevin. Section 18–4–405 is part of an extensive theft statute whose origins predate the turn of the century. §§ 18–4–401 to –415, 8 C.R.S. (1978 & 1985 Supp.). The section itself was adopted in 1971 and was amended to its present form in 1973. Ch. 121, sec. 1, § 40–4–405, 1971 Colo.Sess.Laws 388, 429; Ch. 154, sec. 1, § 40–4–405, 1973 Colo.Sess. Laws 536, 536. Unlike the traditional replevin remedy, the action described in section 18–4–405 allows an owner to regain only property "obtained by theft, robbery, or burglary" rather than any property that has been "wrongfully taken or detained." *Cf.* Dobbs, *Handbook on the Law of Remedies,* § 5.13 at 399. Moreover, its placement in the criminal code and its allowance of treble damages strongly suggest that section 18–4–405 was intended to serve primarily a punitive, rather than a remedial, purpose by depriving thieves and persons who buy and sell stolen goods of the immediate fruits of their criminal activities and by making such persons pay damages that by definition are three times greater than the amount necessary to compensate their victims.

■ Just as section 18–4–405 cannot be considered to be a codification of the law of replevin, neither can it be read to provide UMC's requested remedy of constructive trust. The constructive trust is an equitable device used to compel one who unfairly holds a property interest to convey

that interest to another to whom it justly belongs. Restatement of Restitution, § 160 (1937); 7 G. Bogert, *The Law of Trusts and Trustees*, § 471 at 3 (1978). "When property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Page v. Clark*, 197 Colo. 306, 315, 592 P.2d 792, 798 (1979) (quoting *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 122 N.E. 378 (1919)). The successful plaintiff in a constructive trust action wins an *in personam* order that requires the defendant, the constructive trustee, to transfer specific property in some form to the plaintiff, the beneficiary of the trust. Dobbs, *Handbook on the Law of Remedies*, § 4.3 at 241. The purpose of the remedy is to prevent the defendant from being unjustly enriched at the plaintiff's expense. Restatement of Restitution § 160 comments c, d; 5 A. Scott, *The Law of Trusts*, § 462.2 at 3417 (3d ed. 1967); Dobbs, *Handbook on the Law of Remedies*, § 4.3 at 241.

▉ The type of relief provided in section 18-4-405 differs in several critical aspects from the constructive trust remedy. First, the statute allows a rightful owner to reacquire stolen property, but says nothing of the owner's rights to property or proceeds for which the stolen property may have been exchanged. The owner has the right to the property "against any person in whose possession he finds *the property.*" § 18-4-405, 8 C.R.S. (1978) (emphasis added). The beneficiary of a constructive trust, on the other hand, may "follow property into its product." 5 Scott, *The Law of Trusts*, § 507 at 3571. The trust can attach to proceeds of the property or to other property purchased by the trustee into which the original property or its proceeds can be traced. Restatement of Restitution § 160 comment h; 7 Bogert, *The Law of Trusts and Trustees*, § 471 at 4-5. Thus, whereas section 18-4-405 allows for the recovery of the stolen property itself and, in some cases, for treble damages, a constructive trust beneficiary may obtain, through tracing, not merely what was lost

but also other property or profits traceable to that lost property. Dobbs, *Handbook on the Law of Remedies*, § 4.3 at 242-44.

▉ Second, as discussed above, section 18-4-405 refers to the recovery of property obtained by "theft, robbery, or burglary." A constructive trust, however, can attach to more than just *stolen* property; it can attach to property obtained by fraud, duress, or the abuse of a confidential relationship, *Page v. Clark*, 197 Colo. at 315, 592 P.2d at 798, or to any other property that "in equity and good conscience" does not belong to the constructive trustee. Dobbs, *Handbook on the Law of Remedies*, § 4.3 at 241; *see, e.g., Askins v. Easterling*, 141 Colo. 83, 347 P.2d 126 (1959) (one-half interest in house acquired by deceased spouse in her own name rather than in both names as promised was subject to constructive trust in favor of surviving spouse).

▉ Finally, section 18-4-405 differs from a constructive trust remedy in that the statute permits recovery of property that has fallen into the hands of a bona fide purchaser for value. Although a constructive trust can be imposed on a third party into whose possession the property or its proceeds can be traced, it cannot operate against a third party who acquired the property in good faith, for value, and without notice of the circumstances under which the property originally was wrongfully acquired. Restatement of Restitution § 172; 13 Bogert, *The Law of Trusts and Trustees*, § 881 at 159-63 (1982); 5 Scott, *The Law of Trusts*, §§ 474-478 at 3454-59. The rationale for the bona fide purchaser defense to the imposition of a constructive trust is simply that "[a] person who has obtained the title to property for value and without notice of the claim of another to the property is not unjustly enriched if he is permitted to retain it." 5 Scott, *The Law of Trusts*, § 474 at 3454. By contrast, section 18-4-405 does not allow a bona fide purchaser to retain stolen property even though doing so would not unjustly enrich that purchaser.

Section 18–4–405 should not be read as a codification of the remedy of replevin or as a delineation of the grounds for creating a constructive trust. Instead, it provides independent remedies to the owner of stolen property in circumstances specifically described in the statute. Therefore, although the statute may be available to UMC in its efforts to be compensated for Roger Allen's embezzlement,[2] it does not authorize the imposition of a constructive trust in this case.

## IV.

Even though section 18–4–405 does not provide the means by which the trial court could impose a constructive trust in this case, UMC can reach certain property in Pamela Allen's possession through the court's equitable powers to impose an equitable lien or a constructive trust on that property. In its complaint in intervention, UMC requested a constructive trust as to the $75,000 promissory note and the deed of trust that secures that note, and a constructive trust and an equitable lien on the Driver Lane property to the extent of funds invested in that property that were obtained by borrowing against the family home. At trial, UMC contended that it also was entitled to the difference between the amount of funds Pamela received from the sale of the Driver Lane residence and the amount she invested in the Florida residence. We hold that UMC is entitled to either an equitable lien, a constructive trust, or both, on certain property held by Pamela. On remand, the trial court can fashion an appropriate remedy after making necessary factual findings as to the circumstances under which Pamela acquired the property and the present interests of Pamela, UMC, and other parties in that property.

As a preliminary matter, we must describe the circumstances that justify the imposition of an equitable lien. When imposed to prevent unjust enrichment, an equitable lien is a special and limited form of a constructive trust. Restatement of Restitution § 161; Dobbs, *Handbook on the Law of Remedies*, § 4.3 at 249. Whereas the beneficiary of a constructive trust receives title to the trust property, a plaintiff who receives an equitable lien obtains merely a security interest in the property held by the defendant and can use that interest to satisfy a money claim against the defendant. Dobbs, *Handbook on the Law of Remedies*, § 4.3 at 249; 5 Scott, *The Law of Trusts*, § 463 at 3425. An equitable lien is the proper remedy "where part of the property or part of the fund belongs in good conscience to the defendant, or at any rate belongs to someone other than the plaintiff." Dobbs, *Handbook on the Law of Remedies*, § 4.3 at 249–50. An equitable lien also may be the preferable remedy in a case in which the defendant has used the plaintiff's property to purchase other property and the other property has decreased in value. In such a case, in proper circumstances the plaintiff can have an equitable lien on the later-acquired property and a money judgment against the defendant for any deficiency between the value of the plaintiff's property and the value of the later-acquired property. 5 Scott, *The Law of Trusts*, § 463 at 3425.

Neither an equitable lien nor a constructive trust is available against a bona fide purchaser for value. Restatement of Restitution § 172; 13 Bogert, *The Law of Trusts and Trustees*, § 881 at 159–60; Dobbs, *Handbook on the Law of Remedies*, § 4.7 at 283; 5 Scott, *The Law of Trusts*, § 474 at 3454. Pamela Allen contends that she is a bona fide purchaser for value. She argues that she gave significant value for the property pursuant to the settlement agreement since by entering into the agreement, she surrendered further claims to property division, maintenance, child support and attorney's fees. The trial court agreed with Pamela's contention that she gave value, noted that she had no knowledge of UMC's claimed interests in the Allens' marital property, and

---

**2.** UMC did not include § 18–4–405 as a basis for relief in its complaint in intervention.

concluded that she was a bona fide purchaser for value. The court of appeals neither affirmed nor rejected this conclusion.

 We hold that even though Pamela Allen took property without knowledge of UMC's interests, she is not a bona fide purchaser because she did not give value for the property she received in the dissolution proceeding. Although agreeing to accept a specified amount of property, maintenance, and child support may be adequate consideration to support a property settlement agreement, it does not constitute "value" sufficient to make Pamela a bona fide purchaser for the purpose of defending against UMC's equitable claims. The focus in a case like the present one should not be on a strict definition of value, but instead should be on whether the person claiming bona fide purchaser status has been unjustly enriched. Dobbs, *Handbook on the Law of Remedies*, § 4.7 at 291–92. It is uncontroverted that Roger Allen embezzled money from UMC, used that money to invest in the family home and other property, and then subjected that property to division as marital property. The property was never truly a marital asset and should never have been subject to the Allens' property division negotiations. To allow Pamela Allen to gain legal and equitable title to the products of Roger's embezzlement simply by entering into a property settlement would be to enrich her unjustly at the expense of UMC. *See Maryland Casualty Co. v. Schroeder*, 446 S.W.2d 117 (Tex.Civ.App.1969) (embezzler's wife who acquired property as part of divorce judgment could not own the property clear of the claims of the victim of the embezzlement unless she could prove that embezzled funds were not used to purchase the property).

Furthermore, many courts have refused to recognize bona fide purchaser status in the spouses of persons who have misappropriated property. *E.g., McMerty v. Herzog*, 702 F.2d 127 (8th Cir.1983); *LaBarbera v. LaBarbera*, 116 Ill.App.3d 959, 72 Ill.Dec. 431, 452 N.E.2d 684 (1983); *American Railway Express Co. v. Houle*, 169 Minn. 209, 210 N.W. 889 (1926); *Namow Corp. v. Egger*, 99 Nev. 590, 668 P.2d 265 (1983); *Hirsch v. Travelers Insurance Co.*, 134 N.J.Super. 466, 341 A.2d 691 (App.Div. 1975); *Richards v. Richards*, 58 Wis.2d 290, 206 N.W.2d 134 (1973); *but cf. Wiseman v. Richardson*, 154 Kan. 245, 118 P.2d 605 (1941). Most of these courts base their refusal on a determination that the spouse has not given value for the misappropriated property, but rather has gained an interest in the property simply by virtue of being married to the person who misappropriated the property. *McMerty v. Herzog*, 702 F.2d at 130; *Hirsch v. Travelers Insurance Co.*, 341 A.2d at 694; *Richards v. Richards*, 206 N.W.2d at 138; *cf. Fidelity & Deposit Co. of Maryland v. Stordahl*, 353 Mich. 354, 91 N.W.2d 533 (1958) (wife of embezzler is bona fide purchaser as to undivided one-half interest in property; she gave value since she contributed money and labor toward purchase of property). One court has stated that "[m]arriage itself has been considered value, so as to make the wife a *bona fide* purchaser, only where the marriage is in consideration of the transfer of the property." *Hirsch v. Travelers Insurance Co.*, 341 A.2d at 694 (emphasis in original). There is no reason to enhance a spouse's interest in misappropriated property merely because the spouse subsequently decides to dissolve the marriage.

 As a person who acquired title to property without notice that another party had equitable ownership of the property, but who did not pay value, Pamela Allen is not a bona fide purchaser for value. 5 Scott, *The Law of Trusts*, § 510 at 3595. She is instead an innocent donee or a gratuitous transferee. *Id.* A constructive trust or an equitable lien can be imposed on the product of wrongfully obtained property even when that product has been transferred to an innocent donee, Restatement of

Restitution § 161 comment d, § 168; 5 Scott, *The Law of Trusts*, § 510 at 3597; Dobbs, *Handbook on the Law of Remedies*, § 4.7 at 283, § 9.6 at 650–51, since the equitable interests that attached to the product before it was transferred are not cut off by the transfer, Restatement of Restitution § 168; 5 Scott, *The Law of Trusts*, § 510 at 3597. However, an innocent donee is liable only to the extent to which she is unjustly enriched at the time when she acquires notice of the equitable ownership of the other party. *Id.* at 3595. Moreover, the donee may be entitled to reimbursement for improvements she makes or value she contributes to the product of the wrongfully obtained property. *Namow Corp. v. Egger*, 668 P.2d at 267.

 Thus, because Pamela Allen is only an innocent donee, not a bona fide purchaser, UMC is entitled to an equitable lien, a constructive trust or both on those products of the embezzled money that are now in Pamela's hands. The precise remedy will have to be fashioned by the trial court on remand. UMC must have the opportunity to trace its property (the embezzled funds) into the products of that property that are now in Pamela's possession. It also must decide whether it wants to request a constructive trust or an equitable lien on that product. The trial court will have to determine whether other parties, including Pamela Allen, have ownership interests in some or all of that product—for example, the Florida house—since an equitable lien, and not a constructive trust, would be the appropriate means of recognizing UMC's interest in such circumstances. *See* Dobbs, *Handbook on the Law of Remedies*, § 4.3 at 249–50. In addition, Pamela is entitled to assert claims for reimbursement for improvements or contributions she may have made to whatever property is subject to trust or lien. *See Namow Corp. v. Egger*, 668 P.2d at 267.

The judgment of the court of appeals is affirmed.