994 F.2d 716
 25 Fed.R.Serv.3d 1005
 David J. LYONS, Commissioner of Insurance for the State of
Iowa and receiver for the Iowa Trust,
Plaintiff-Appellee/Cross-Appellant,
v.
JEFFERSON BANK & TRUST, a Colorado corporation,
Defendant-Appellant/Cross-Appellee.
 Nos. 92-1209, 92-1212 and 92-1377.
 United States Court of Appeals,
Tenth Circuit.
 May 3, 1993.
Rehearing Denied June 17, 1993.
 
 William C. Waller, Jr. (Denis H. Mark and Robert M. Vinton with him, on the briefs) of Vinton, Waller, Slivka & Panasci, Denver, CO, for defendant-appellant/cross-appellee.
 Walter W. Garnsey, Jr., of Kelly/Haglund/Garnsey & Kahn, Denver, CO (Edwin S. Kahn of Kelly/Haglund/Garnsey & Kahn, Bonnie J. Campbell, Atty. Gen., and Anuradha Vaitheswaran, Asst. Atty. Gen., Iowa Securities Bureau, Des Moines, IA, with him, on the briefs), for plaintiff-appellee/cross-appellant.
 Before McKAY, Chief Judge, McWILLIAMS and KELLY, Circuit Judges.
 McKAY, Chief Judge.
 
 
 1
 * This case is a dispute between two innocent parties, both of which had the misfortune of retaining Mr. Steven Wymer as their investment counselor. On November 25, 1991, Defendant Jefferson Bank & Trust sought to temporarily liquidate its portfolio of $44.7 million under the management of Mr. Wymer. Jefferson Bank re-invested these moneys the next day. On December 9, 1991, the Securities and Exchange Commission filed a civil action against Mr. Wymer and the companies he controlled. On December 10, 1991, Jefferson Bank liquidated its position with Mr. Wymer for a second time, this time permanently. Two hours later, all of Mr. Wymer's assets were frozen at the request of the SEC.
 
 
 2
 On December 13, 1991, the Iowa Trust, an investment vehicle for several public organizations in the state of Iowa, informed Jefferson Bank that the moneys it received as proceeds of the first liquidation on November 25, were actually the proceeds of Iowa Trust's portfolio with Mr. Wymer, which had been embezzled earlier that day. Iowa Trust claimed that it could trace those funds through a complex series of transactions to Jefferson Bank's account.
 
 
 3
 Four days later, on December 17, a criminal complaint was filed in United States District Court for the Central District of California, charging Mr. Wymer with securities fraud and mail fraud. On September 29, 1992, Mr. Wymer plead guilty to one count of violating the RICO statute, 18 U.S.C. § 1962(c) (1988), three counts of mail fraud contrary to 18 U.S.C. § 1341 (1988), one count of bank fraud contrary to 18 U.S.C. § 1344 (1988), three counts of securities fraud contrary to 15 U.S.C. § 78j(b) (1988) and 17 C.F.R. § 240.10b-5 (1991), and one count of obstruction of the SEC contrary to 18 U.S.C. § 1505 (1988). He also agreed to forfeit substantially all his assets to create a fund to reimburse his victims. The companies he controlled are now in Chapter 7 liquidation proceedings.
 
 
 4
 When Jefferson Bank refused Iowa Trust's demand to return the funds in question, Iowa Trust[1] filed this diversity suit in the District of Colorado, and asked for a temporary restraining order placing the money in escrow. The trial court denied the T.R.O. but subsequently granted a preliminary injunction under which Jefferson Bank was ordered to place $43.1 million in escrow. Lyons v. Jefferson Bank & Trust, 781 F.Supp. 1525 (D.Colo.1992) [hereinafter Lyons I ].[2]
 
 
 5
 The suit progressed on an expedited basis and came to trial in late April 1992. At trial, Iowa Trust presented detailed evidence of a long series of transactions, all occurring on November 25, 1991, through which its funds were transferred to Jefferson Bank's account. It also presented evidence which showed that the portfolio assets that Jefferson Bank thought were sold on November 25 did not in fact exist. Jefferson Bank, in presenting its case, relied almost exclusively on the records provided by Mr. Wymer to demonstrate that it did indeed own a substantial portfolio, and that all it received on November 25 were the proceeds of the sale of those assets.
 
 
 6
 In its findings of fact and conclusions of law, the trial court found that "the overwhelming credible evidence" supported Iowa Trust's version of the facts. Lyons v. Jefferson Bank & Trust, 793 F.Supp. 981, 984 (D.Colo.1992) [hereinafter Lyons II ]. Accordingly, it awarded Iowa Trust $42,843,614.13 plus the interest attributable to that amount from the escrow account. Id. at 987.[3] The trial court rejected Iowa Trust's claim for statutory pre-judgment interest. Id. at 986-87. It also stated that Iowa Trust was entitled to any profits that were attributable to the $42.8 million trust res prior to the sequestration of the funds in escrow. Id. at 986. However, because it found that Iowa Trust had failed to prove the amount of such profits, it awarded no additional amounts to Iowa Trust. Id. at 986.
 
 
 7
 Following trial, Jefferson Bank realized that it, too, had been a victim of Mr. Wymer's fraud. Jefferson Bank retained new counsel and filed an extensive post-trial brief that, for the first time, proceeded on the basis of Iowa Trust's version of the facts. Specifically, it argued that the records from Mr. Wymer, which it had relied on at trial, were fraudulent, and that the money it received from the "sale" of bonds that did not in fact exist was actually funds that Mr. Wymer had embezzled from Iowa Trust.
 
 
 8
 In short, they claimed that Mr. Wymer embezzled Iowa Trust's money to cover up his prior embezzlement of Jefferson Bank's money. They requested that the evidence be re-opened to allow the trial court to make new findings of fact and made several new legal arguments. Their principal new theory was that no justice was achieved by transferring a loss from one innocent victim to another, and, therefore, that the court should leave the parties where it found them.
 
 
 9
 The trial court declined to exercise its discretion under Fed.R.Civ.P. 52 and 59 to re-open the evidence or grant a new trial. Lyons v. Jefferson Bank & Trust, 793 F.Supp. 989, 993 (D.Colo.1992) [hereinafter Lyons III ]. The court also rejected Jefferson Bank's legal arguments as untimely, calling the tardiness a "dispositive deficiency." Id. at 990. Nonetheless, it addressed Jefferson Bank's arguments on the merits "in the interest of a complete record," id., and rejected each in turn.
 
 
 10
 After the district court denied post-judgment relief under Rules 52 and 59, Jefferson Bank returned a second time, this time seeking relief from judgment under Rule 60(b). It claimed that Mr. Wymer's guilty plea, which substantially corroborated the factual allegations in their post-trial motion,[4] constituted new evidence that justified a new trial. The district court rejected that motion as well.[5]
 
 This consolidated appeal followed.[6]
 II
 
 11
 * We consider first the issues raised in Jefferson Bank's initial appeal from the judgment of the district court. We defer until part VI infra our discussion of Jefferson Bank's subsequent appeal from the district court's denial of its motion to re-open the judgment under Fed.R.Civ.P. 60(b).
 
 
 12
 In its initial appeal, Jefferson Bank asks us to review numerous issues that Iowa Trust claims were not properly preserved for appeal. We therefore begin our discussion with a review of the principles regarding the preservation of issues for appeal.
 
 
 13
 In Singleton v. Wulff, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), the Supreme Court stated that "[i]t is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." Id. at 120, 96 S.Ct. at 2877. The court elaborated:
 
 
 14
 [T]his is "essential in order that parties may have the opportunity to offer all the evidence that they believe relevant to the issues ... [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence." We have no idea what evidence, if any, [the opposing party] would, or could, offer ..., but this is only because [it] has had no opportunity to proffer such evidence. Moreover, even assuming that there is no such evidence, [the opposing party] should have the opportunity to present whatever legal arguments he may have....
 
 
 15
 Id. (quoting Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941)).
 
 
 16
 In the years since, we have further fleshed out other reasons underlying this rule. Thus, we have noted that review of issues not raised below "would ... require us to frequently remand for additional evidence gathering and findings," Hicks v. Gates Rubber Co., 928 F.2d 966, 970-71 (10th Cir.1991); would undermine the "need for finality in litigation and conservation of judicial resources," id. at 971; would often "have this court hold everything accomplished below for naught," Bradford v. United States, 651 F.2d 700, 704 (10th Cir.1981); and would often allow "[a] party ... to raise [a] new issue on appeal [when that party] invited the alleged error below." Id.
 
 
 17
 However, this rule is not without exceptions. We have held that it does not apply to "cases where the jurisdiction of a court to hear a case is questioned, [or] sovereign immunity is raised." Hicks, 928 F.2d at 970. More generally, the Supreme Court has stated:
 
 
 18
 The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases. We announce no general rule. Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt ... or where "injustice might otherwise result."
 
 
 19
 Singleton, 428 U.S. at 121, 96 S.Ct. at 2877 (citations omitted) (quoting Hormel, 312 U.S. at 557, 61 S.Ct. at 721).
 
 
 20
 Consequently, we have exercised our discretion to hear issues for the first time on appeal only in the most unusual circumstances. See Petrini v. Howard, 918 F.2d 1482, 1483 n. 4 (10th Cir.1990) (proper resolution of the issue was beyond doubt and injustice would otherwise result); Grubb v. FDIC, 833 F.2d 222, 224 (10th Cir.1987) (discretion exercised to consider the conditions of a supersedeas bond, in part because the issue was purely a question of law); Stahmann Farms, Inc. v. United States, 624 F.2d 958, 961 (1980) (discretion exercised where the issue was purely one of law, and where the issue was a ground for affirming, not reversing, the trial court); Leo Sheep Co. v. United States, 570 F.2d 881, 891 (10th Cir.1977) (discretion exercised where closely related issue was raised below, appellant briefed the issue and failed to object to its consideration until the petition for rehearing), rev'd on other grounds, 440 U.S. 668, 99 S.Ct. 1403, 59 L.Ed.2d 677 (1979).
 
 B
 
 21
 * In the main, however, we have consistently refused invitations to consider new issues on appeal. We have therefore repeatedly stated that a party may not lose in the district court on one theory of the case, and then prevail on appeal on a different theory. Lone Star Steel v. United Mine Workers, 851 F.2d 1239, 1243 (10th Cir.1988); United States v. Lattauzio, 748 F.2d 559, 561 (10th Cir.1984). We have been particularly insistent on this rule in cases where the theory advanced on appeal was in direct contradiction to the theory pursued in the trial court. See Dime Box Petroleum Corp. v. Louisiana Land and Exploration Co., 938 F.2d 1144, 1148 (10th Cir.1991); Bradford v. United States, 651 F.2d 700, 704-05 (10th Cir.1981).
 
 2
 
 22
 Our requirement that an issue be " 'presented to, considered [and] decided by the trial court,' " Cavic v. Pioneer Astro Indus., 825 F.2d 1421, 1425 (10th Cir.1987) (quoting Eureka-Carlisle Co. v. Rottman, 398 F.2d 1015, 1019 (10th Cir.1968)), raises two questions key in this appeal.
 
 
 23
 * The first is what kind of specificity is required in the trial court in order to preserve an issue for appeal. The touchstone on this issue is that "vague, arguable references to [a] point in the district court proceedings do not ... preserve the issue on appeal." Monarch Life Ins. Co. v. Elam, 918 F.2d 201, 203 (D.C.Cir.1990). While we have at times given a liberal reading to pleadings and motions in the trial court, see Lurch v. United States, 719 F.2d 333, 338-39 (10th Cir.1983), cert. denied, 466 U.S. 927, 104 S.Ct. 1710, 80 L.Ed.2d 182 (1984); Stone v. First Wyoming Bank, 625 F.2d 332, 348 (10th Cir.1980), we have consistently turned down the argument that the raising of a related theory was sufficient. See Grasmick v. Otis Elevator Co., 817 F.2d 88, 89-90 (10th Cir.1987) (negligent failure to warn claim does not preserve negligent design claim); Baker v. Penn Mut. Life Ins. Co., 788 F.2d 650, 663 (10th Cir.1986) (breach of contract argument does not preserve issue of tortious conversion of negotiable instruments); United States v. Lattauzio, 748 F.2d 559, 561 (10th Cir.1984) (argument that guarantors of a debt were not liable because the collateral was not sold in a commercially reasonable manner does not preserve theory that they could not be liable because the debtor had not defaulted).
 
 
 24
 b
 
 
 25
 Similarly, we have held that where an issue is raised but not pursued in the trial court, it cannot be the basis for the appeal. See Cavic v. Pioneer Astro Indus., 825 F.2d 1421, 1425 (10th Cir.1987) (statute of limitations defense, though raised in the answer, the pre-trial order, and the opening statement, was never mentioned during the actual trial and could not be pursued on appeal); Northern Natural Gas Co. v. Hegler, 818 F.2d 730, 734 (10th Cir.1987) (argument that could be inferred from a trial exhibit, but was not otherwise discussed, could not be argued on appeal); Dumbell Ranch Co. v. Cherokee Exploration, Inc., 692 F.2d 706, 707-08 (10th Cir.1982) (implied license claim, though mentioned in some pre-trial memoranda and mentioned by one witness, did not appear in the answer or the pre-trial order, and was not discussed by counsel at trial, and thus was waived); Gilbert v. Medical Economics Co., 665 F.2d 305, 310 (10th Cir.1981) (while "vilification" claim, under a liberal reading, encompasses a "false light" claim, the plaintiff never indicated to the trial court that she was pursuing a "false light" theory, and therefore could not argue the theory on appeal).
 
 3
 
 26
 A second issue is the effect that a post-trial motion which raises a new issue has on appellate review. It is true that we have in the past noted the failure to bring a post-trial motion in rejecting attempts to raise new issues on appeal. See Northern Natural Gas Co. v. Hegler, 818 F.2d 730, 734 (10th Cir.1987). However, an untimely motion, by itself, is not sufficient to preserve an issue for appellate review. See Melton v. Oklahoma City, 879 F.2d 706, 718 n. 15 (10th Cir.1989) (issue raised for the first time on a motion for judgment N.O.V. not properly preserved), vacated on other grounds, 928 F.2d 920 (10th Cir.1991) (en banc); Burnette v. Dresser Indus., 849 F.2d 1277, 1285 (10th Cir.) (arguments raised on motion for reconsideration were not considered by the trial court and would not be addressed on appeal).
 
 C
 
 27
 In short, there are many ways in which a case may present what Singleton describes as "issues not passed upon below." Singleton, 428 U.S. at 120, 96 S.Ct. at 2877. One is a bald-faced new issue. Another is a situation where a litigant changes to a new theory on appeal that falls under the same general category as an argument presented at trial. A third is a theory that was discussed in a vague and ambiguous way. A fourth is issues that were raised and then abandoned pre-trial. A fifth is an issue raised for the first time in an untimely motion. These are all different aspects of the same principle that issues not passed upon below will not be considered on appeal. As such, they are governed by the same law.
 
 III
 
 28
 * 1
 
 
 29
 Turning to the facts of the present case, Jefferson Bank's briefs concede, with welcome candor, that its arguments concerning the alleged Ponzi scheme and concerning the need to prove a quasi-contractual claim for unjust enrichment were not raised until a post-trial motion. Nevertheless, Jefferson Bank strenuously argues that because the trial court addressed the merits of these arguments, they are preserved for review.
 
 
 30
 We do not agree. The trial court was very explicit in stating that it did not intend to provide an avenue for appellate review of new legal theories. It stated:
 
 
 31
 Defendant's motions are obviously filed by new counsel in a blatant attempt to belatedly inject new issues into the case at the district court level, hoping that these issues may be preserved for appeal. Despite this dispositive deficiency in defendant's motions, I will address the merits of the matter presented in the interest of a complete record.
 
 
 32
 Lyons III, 793 F.Supp. at 990. It subsequently added that "defendant's failure to assert these arguments before trial precludes granting a new trial or rehearing. However, in an abundance of caution, I will consider each argument in turn." Id. at 992.
 
 
 33
 Under these circumstances, where the trial court explicitly rejected Jefferson Bank's invitation to insert new legal theories into the case, we hold that the trial court's discussion of the merits of these issues in "the interest of a complete record" is insufficient to preserve these issues for appeal. By addressing the merits in this way, the trial court reduced the possibility of a time-consuming remand in the event that we reversed its holding that the issues were raised too late. The trial court had the discretion to proceed in this manner. We decline to interpret the trial court's discussion of the merits in a way that gives Jefferson Bank a windfall and nullifies the court's rejection of Jefferson Bank's "blatant attempt to ... preserve[ ] [these issues] for appeal." Accordingly, Jefferson Bank's arguments relating to Ponzi schemes or the elements of a quasi-contractual claim are not properly preserved for appeal.
 
 2
 
 34
 Iowa Trust also attacks three of Jefferson Bank's other arguments as untimely: the status of Jefferson Bank as a bona fide purchaser based on the satisfaction of the implied debt created by Mr. Wymer's embezzlement; the failure of Iowa Trust to trace the funds in the period before Mr. Wymer stole its money on November 21, 1991; and the failure of Iowa Trust to trace the funds in the period from December 11, 1991, to January 22, 1992, after Jefferson Bank had received the funds and had begun investing them.
 
 
 35
 Jefferson Bank correctly points out that it vigorously contested both its status as a bona fide purchaser and the lack of adequate tracing at trial. However, it is abundantly clear from our careful review of the record that Iowa Trust and the trial court are correct in stating that these issues were not preserved below. In pre-trial papers, Jefferson Bank did claim that it was a bona fide purchaser ("BFP") and that Iowa Trust failed to trace its money to Jefferson Bank's possession. Nevertheless, the record reveals that Jefferson Bank has fundamentally altered its theory of the case on appeal. Jefferson Bank's position at trial was that the statements it received from Mr. Wymer were correct, so any bonds it may have acquired were purchased for fair value. At no time during the proceedings before the trial court did Jefferson Bank present either arguments or evidence to support its new theory that it, too, was a victim of Mr. Wymer's embezzlement; that this embezzlement created an implied debt; and that satisfaction of this implied debt gave Jefferson Bank BFP status. Similarly, Jefferson Bank presented neither arguments nor evidence to support its new assertion that Iowa Trust's tracing was inadequate on any day other than November 25. Thus, while Jefferson Bank did make reference to these general principles, it never presented these specific points at trial.
 
 
 36
 These arguments therefore fall under the rule that a party may not try the case on one theory and appeal on another. See supra part II(B)(1).[7] In addition, two of these arguments, that Jefferson Bank was defrauded by Mr. Wymer and that the funds could not be traced while they were in Jefferson Bank's possession, directly contradict arguments and representations made to the trial court. See supra part I. As with the arguments that Jefferson Bank admits were untimely, we are also unwilling to view the discussion of these issues by the trial court "in the interest of a complete record" as altering their status as "issues not passed upon below." Singleton, 428 U.S. at 120, 96 S.Ct. at 2877.
 
 3
 
 37
 Jefferson Bank's remaining substantive claim is that Iowa Trust failed to properly trace its money through the various transactions on November 25, 1991. Specifically, Jefferson Bank points out that at one point the money was placed in an account that already contained $7.5 million of other money. Jefferson Bank claims that under either the "first in, first out" rule used by one of Iowa Trust's experts, or a presumption that a wrongdoer uses his own funds first, see, e.g., Holbrook Irr. Dist. v. First State Bank, 84 Colo. 157, 268 P. 523, 524 (1928), it is entitled to a presumption that a significant amount of Iowa Trust's money remained in that account and was not thereafter transferred to Jefferson Bank. Thus, Jefferson Bank argues that the amount of the constructive trust should be only $37.2 million, not $42.8 million.
 
 
 38
 Jefferson Bank did argue before the trial court that Iowa Trust had not met its burden of proving that its funds passed through this account intact. Nevertheless, Iowa Trust points out in its answer brief that at no time did Jefferson Bank argue for any particular presumption to be applied by the court. Jefferson Bank does not dispute this contention in its reply brief, and our own review of the record has similarly found that no specific presumptions were argued to the court. As such, the issue of the proper presumptions to be applied was not ruled upon by the trial court and is not properly before us.
 
 4
 
 39
 In its reply brief, Jefferson Bank presents new arguments under the Uniform Fiduciaries Law, Colo.Rev.Stat. §§ 15-1-101 to -113 (1987). This argument was not raised at trial, in the post-trial motion, or in Jefferson Bank's opening brief. We conclude that this argument is not preserved for appeal.
 
 B
 
 40
 Although most of Jefferson Bank's arguments were not properly preserved for appeal, Jefferson Bank nonetheless asks this court to exercise our discretion to hear its arguments for the first time on appeal to avoid an injustice. In particular, it focuses on its argument that it was also a victim of Mr. Wymer's fraud.
 
 
 41
 In asking us to invoke our discretion under Singleton, Jefferson Bank argues (i) that its claim that the loss cannot be shifted from one innocent party to another raises a purely legal issue, (ii) that throughout the trial Jefferson Bank relied on the statements provided by Mr. Wymer because it was understandably unable to see through the intricacies of Mr. Wymer's fraud, and (iii) that a gross injustice was created by shifting the loss from one innocent victim of fraud to another. We are not persuaded by these arguments.
 
 
 42
 Jefferson Bank is seeking to have things both ways. On the one hand, it argues that the trial court should have left the parties where Mr. Wymer left them, because "it is impossible for the court to fashion a remedy which is equitable" between two innocent purchasers. (Appellant's Reply Br. at 7.) On the other hand, it implores this court to exercise its equitable discretion to hear new arguments on appeal, and not to leave the parties where the trial court left them, because of the gross injustice in the loss being placed on one innocent party rather than the other. Jefferson Bank is therefore arguing that, between these two innocent parties, equity is not advanced by shifting the loss to one (Jefferson Bank), but is greatly advanced by shifting the loss to the other (Iowa Trust). Both arguments cannot be true.
 
 
 43
 We also note that while Jefferson Bank presents substantial arguments in support of its claim that a loss cannot be shifted from one innocent victim to another, this is far from a case "where the proper resolution is beyond any doubt." Singleton, 428 U.S. at 121, 96 S.Ct. at 2877. Iowa Trust has presented to this court several precedents from other jurisdictions which directly contradict Jefferson Bank's position. Given that "[t]he failure to raise the issue with the trial court precludes review except for the most manifest error," Hicks v. Gates Rubber Co., 928 F.2d 966, 970 (10th Cir.1991), we cannot consider this issue further in the context of the initial appeal.
 
 
 44
 Additionally, both sides in this case have repeatedly asked the courts to pursue this matter on an expedited basis, as both sides have a pressing need for the funds in question. A remand to allow additional proceedings on Jefferson Bank's new theories therefore would profoundly prejudice Iowa Trust. "Under all of these circumstances, a gross injustice would be worked upon [this] appellee[ ] if we disregarded an established principle of appellate review and required the entire suit to be relitigated simply because [the appellant] lost the first time around." Bradford v. United States, 651 F.2d 700, 705 (10th Cir.1981).
 
 
 45
 Jefferson Bank finally argues that the trial court's rejection "in the interest of a complete record" of its argument on shifting claims from one investor to another, Lyons III, 793 F.Supp. at 990, 993, is a dangerous and unique precedent which, if not reversed, would cause great mischief in the litigation surrounding this and other frauds. Jefferson Bank therefore urges that public policy requires us to reach the merits.
 
 
 46
 We do not agree. As noted above, Iowa Trust has presented several cases, including some dating back to the nineteenth century, which resolve this legal question in the same manner suggested by the trial court. The views of the trial court therefore are hardly "unique." While we acknowledge that Jefferson Bank presents both case law and commentary supporting its position, we have noted above that this is not a situation where the proper resolution of the question is beyond any doubt. We have every confidence that if and when this issue of Colorado law is before this court or an authoritative court of the state of Colorado, it will arrive at the proper conclusion. We therefore decline to exercise our discretion to consider Jefferson Bank's arguments for the first time on appeal.[8]
 
 IV
 
 47
 Jefferson Bank has preserved one issue for appeal, which regards the tracing of Iowa Trust's money to Jefferson Bank's account. This issue deals with the commingling of Iowa Trust's funds with $7.5 million that were already in an account through which it passed. We have previously declined to address the legal presumptions that the trial court applied with regard to the commingling with the $7.5 million. However, Jefferson Bank has preserved for appeal their general claim that the trial court's finding of fact that Iowa Trust's funds passed through this account intact was clearly erroneous.
 
 
 48
 The evidence showed a series of seven transactions, all involving between $42.8 million and $44.9 million, all of which occurred on the same day. The result was that $42.8 million was taken from Iowa Trust's account, and, seven hours later, $44.9 million was deposited in Jefferson Bank's account. The evidence also showed, and Mr. Wymer's guilty plea confirms, that Jefferson Bank did not own the notes it thought it sold to raise the $44.9 million. Because all these transactions occurred in such a brief time and the amounts involved were so similar, the trial court did not clearly err in finding that the funds flowed through intact.
 
 V
 
 49
 * Iowa Trust cross-appeals, claiming that it is entitled to statutory pre-judgment interest pursuant to Colo.Rev.Stat. § 5-12-102 (1992), which provides in pertinent part:
 
 
 50
 (1) Except as provided in section 13-21-101, C.R.S., when there is no agreement as to the rate thereof, creditors shall receive interest as follows:
 
 
 51
 (a) When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,
 
 
 52
 (b) Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.
 
 
 53
 Pursuant to the statute, Iowa Trust elected to claim interest at the statutory rate of eight percent.
 
 
 54
 The trial court denied pre-judgment interest on the basis of In re Marriage of Allen, 724 P.2d 651 (Colo.1986), stating:
 
 
 55
 "[W]here, as here, the constructive trustee is merely "an innocent donee," it "is liable only to the extent to which [it] is unjustly enriched...." [Allen, 724 P.2d at] 660. Thus, a constructive trust award may not include statutory interest because to do so would provide a windfall to the beneficiary of the constructive trust at the expense of the innocent donee."
 
 
 56
 Lyons III, 793 F.Supp. at 987.
 
 B
 
 57
 We agree with Iowa Trust that the trial court misapprehended the nature of § 5-12-102. The Colorado Supreme Court has been very clear that this section does not contemplate any kind of punishment or moral judgment of the defendant. Rather, the Supreme Court has stated:
 
 
 58
 [T]he purpose of section 5-12-102 is to discourage a person responsible for payment of a claim to stall and delay payment until judgment or settlement. Section 5-12-102 recognizes the time value of money. It represents a legislative determination that persons suffer a loss when they are deprived of property to which they are legally entitled.
 
 
 59
 ....
 
 
 60
 ... As the sponsor of the legislation that became section 5-12-102 stated:
 
 
 61
 All plaintiffs ... are entitled to interest ... from the time they were wronged.... The present state of the law encourages the wrongdoer to stall because in some cases they have the money until judgment or settlement.
 
 
 62
 Mesa Sand & Gravel Co. v. Landfill, Inc., 776 P.2d 362, 364-65 (Colo.1989) (quoting Tape Recording of Testimony before Colorado Senate Judiciary Committee on Senate Bill 463, March 12, 1979) (emphasis supplied by Supreme Court) (citations omitted).
 
 
 63
 Section 5-12-102 "is to be given a broad, liberal construction," Westfield Dev. Co. v. Rifle Inv. Assocs., 786 P.2d 1112, 1122 (Colo.1990), and does not require that the defendant have acted tortiously, Mesa, 776 P.2d at 364, in bad faith, Benham v. Mfrs. & Wholesalers Indem. Exch., 685 P.2d 249, 254 (Colo.Ct.App.1984), or without a good-faith legal justification. Bassett v. Eagle Telecommunications, Inc., 750 P.2d 73, 75-76 (Colo.Ct.App.1987).
 
 
 64
 Iowa Trust claims that the trial court quoted Allen out of context. We agree. The entire sentence states: "However, an innocent donee is liable only to the extent she is unjustly enriched at the time when she acquires notice of the equitable ownership of the other party." Allen, 724 P.2d at 660 (emphasis added). We are unable to read Allen as creating an exception to the general rule that a successful plaintiff is entitled to pre-judgment interest. Rather, we read Allen's focus on unjust enrichment as requiring Iowa Trust to prove the actual profits attributable to the trust res in question for the period prior to the demand for payment, which occurred in December 1991.[9] See Allen, 24 P.2d at 657 ("a constructive trust beneficiary may obtain ... not merely what was lost but also other property or profits traceable to the property"). Only then did Jefferson Bank begin wrongfully withholding the funds within the meaning of § 5-12-102, permitting Iowa Trust to elect statutory pre-judgment interest.
 
 
 65
 We REVERSE the denial of pre-judgment interest. The trial court on remand shall determine the amount of pre-judgment interest due Iowa Trust, and the effect, if any, of the payment of the sequestration of the $43.1 million into escrow on January 23, 1992.
 
 VI
 
 66
 After Mr. Wymer's guilty plea and confession of judgment, which followed the entry of judgment in this case, Jefferson Bank filed a motion under Fed.R.Civ.P. 60(b)(2), seeking to re-open the judgment on two different grounds. Jefferson Bank argued that these documents provided newly discovered evidence that proved its claims that it was a bona fide purchaser because of an antecedent debt owed by Mr. Wymer. Similarly, it argued that the documents proved both parties were innocent victims of a Ponzi scheme run by Mr. Wymer. Jefferson Bank also sought relief under Fed.R.Civ.P. 60(b)(6), claiming that the unusual facts of this case made the enforcement of the judgment a manifest injustice.
 
 
 67
 The trial court denied these motions. The trial court correctly noted the standard that a party must meet under Rule 60(b)(2), which authorizes reopening judgments based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Jefferson Bank had to demonstrate that:
 
 
 68
 (1) the evidence was newly discovered since the trial;
 
 
 69
 (2) [Jefferson Bank] was diligent in discovering the new evidence;
 
 
 70
 (3) the newly discovered evidence could not be merely cumulative or impeaching;
 
 
 71
 (4) the newly discovered evidence had to be material; and
 
 
 72
 (5) that a new trial, with the newly discovered evidence would probably produce a different result.
 
 
 73
 Graham v. Wyeth Lab., 906 F.2d 1399, 1416 (10th Cir.), cert. denied, 498 U.S. 981, 111 S.Ct. 511, 112 L.Ed.2d 523 (1990). The trial court rested its disposition of the Rule 60(b)(2) motions on very narrow grounds. It found that the evidence was immaterial, because it concluded that both of Jefferson Bank's legal arguments were without merit. In addition, it found as a matter of fact that Iowa Trust did not invest in a Ponzi scheme, so it concluded that Jefferson Bank's legal arguments regarding Ponzi schemes, even if correct, did not apply.
 
 
 74
 The trial court denied the Rule 60(b)(6) motion as well, concluding that Jefferson Bank "[did] not present the kind of extraordinary circumstances necessary for Rule 60(b)(6) relief." (Appellant's 2d Supp.App. at 173.)
 
 
 75
 Jefferson Bank filed a further appeal from the denial of these motions.
 
 
 76
 * 1
 
 
 77
 In reviewing the denial of a Rule 60(b) motion to re-open a judgment, we will affirm absent an abuse of discretion. V.T.A., Inc. v. Airco, Inc., 597 F.2d 220, 223 n. 7 (10th Cir.1979). Nevertheless, Jefferson Bank claims that because the trial court based its denial of the Rule 60(b)(2) motions not on discretionary factors, but rather on its findings of fact and conclusions of law, we must apply the standards of review normally applied to such determinations--clearly erroneous for findings of fact and de novo for conclusions of law. We agree. "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990); see also V.T.A., 597 F.2d at 223-24 n. 7 ("We note that [the abuse of discretion] standard applies to reviewing an exercise of discretion. An appellate court can of course readily reverse a lower court that has erred as a matter of law.") (citing 11 Charles A. Wright et al., Federal Practice and Procedure § 2872 (1973)).
 
 
 78
 Iowa Trust argues that review of the district court's findings of fact and conclusions of law is unnecessary, because it claims the Rule 60(b)(2) motion could be denied on other grounds which it argued to the district court, such as the inconsistency of these arguments with Jefferson Bank's theory of the case at trial, the cumulative nature of the evidence, and Jefferson Bank's lack of diligence in pursuing Mr. Wymer's records before trial. Because of the substantial discretion that the trial court possesses under Rule 60(b), we agree that the district court could have justifiably denied the motion on those grounds. The fact remains, however, that it did not exercise its discretion over those factors, choosing instead to base its decision entirely on the facts and the law. We cannot agree with Iowa Trust's argument that we review only for an abuse of discretion. We examine the trial court's legal conclusions de novo and its factual findings for clear error.
 
 2
 
 79
 Iowa Trust, however, also presents a purely legal argument--that the facts of this case are such that, as a matter of law, Jefferson Bank is not entitled to relief under Rule 60(b)(2). While the trial court did not expressly rule on this argument, Iowa Trust properly raised it before that court. (See Pl.Br. in Opp. to Def.Mot. for Relief From J. Pursuant To Fed.R.Civ.P. 60(b)(2) and (6) at 5-7.)[10] We agree with Iowa Trust that, even assuming that the trial court based its denial on an erroneous legal conclusion, Jefferson Bank still failed as a matter of law to meet the requirements of Rule 60(b)(2). We therefore do not reach the legal issues on which the trial court based its decision.
 
 
 80
 Motions to reopen for newly discovered evidence are not favored and Jefferson Bank was required to base its motion "on matter which could not reasonably have been previously adduced." See INS v. Doherty, --- U.S. ----, ----, ----, 112 S.Ct. 719, 724, 726, 116 L.Ed.2d 823 (1992). Although the district court denied the Rule 60(b)(2) motion on the basis that the evidence was not material, it also expressed doubt about Jefferson Bank's diligence, having previously rejected the first round of post-trial motions in part for lack of diligence. See Lyons III, 793 F.Supp. at 990-92. See also 7 James W. Moore & Jo D. Lucas, Moore's Federal Practice § 60.23 (1992) (Rule 60(b)(2) may require a stronger showing concerning the character of the evidence than under Rule 59). In denying the Rule 60(b)(2) motion, the district court found that the "newly discovered evidence" was related to "two new theories not argued at trial." Aplt.2d Supp.App. at 2.
 
 
 81
 The requirements of Rule 60(b)(2) that the moving party have been diligent, and that the newly discovered evidence not be merely cumulative, Graham v. Wyeth Lab., 906 F.2d 1399, 1416 (10th Cir.), cert. denied, 498 U.S. 981, 111 S.Ct. 511, 112 L.Ed.2d 523 (1990), must be read together. The newly discovered evidence must not be cumulative not only with the evidence that the moving party actually presented at trial, but also with the evidence that the moving party could have, had it exercised due diligence, presented at trial. If a party, through negligence or a tactical decision, fails to present evidence that was available, it may not find refuge under Rule 60(b)(2) by finding substantially similar evidence from a newly discovered source.
 
 
 82
 We do not contend that Jefferson Bank could have, with diligence, discovered Mr. Wymer's testimony in time for trial. However, this testimony is only probative of Mr. Wymer's prior misappropriation of Jefferson Bank's funds. At the time of trial Jefferson Bank could have introduced other evidence tending to show the same proposition.
 
 
 83
 Jefferson Bank had reason to believe that Mr. Wymer misappropriated its securities holdings. The SEC investigation of Mr. Wymer, the asset seizures of Mr. Wymer's businesses, the close relationship between Mr. Wymer and Jefferson Bank, and information developed during discovery all provided Jefferson Bank with reasons before trial to believe that Jefferson Bank was not immune from Mr. Wymer's unlawful activities. Jefferson Bank deposed Mr. Wymer in January 1992, well in advance of trial. Although Mr. Wymer invoked his Fifth Amendment right, the questions asked by Jefferson Bank suggest that it was very much aware of Mr. Wymer's transactions, and was suspicious of misappropriation. Despite this knowledge, Jefferson Bank did not move for a continuance, supported an expedited discovery and trial schedule, and proceeded to trial on a different theory of the "for value" element of the BFP issue.
 
 
 84
 Most damaging to Jefferson Bank's position is its motion under Rule 59. Within ten days of the trial, Jefferson Bank, through new counsel, informed the court that it stood ready to prove, based on documents and witnesses that were available at the time of trial, that it, too, was a victim of Mr. Wymer's fraud. Jefferson Bank also stated that it was prepared, based on the same documents and witnesses, to prove the amount of its losses. This alone shows that the motion under Rule 60(b)(2) was not about facts which Jefferson Bank could not, with due diligence, have known at the time of the trial, but merely about a new source of proof for a theory of the case on which it could have presented evidence during the trial. Rule 60(b)(2) may not be used in this situation. We conclude as a matter of law that Iowa Trust is correct in asserting that Jefferson Bank has not shown the diligence necessary for relief under Rule 60(b)(2).
 
 
 85
 We recognize that the evaluation of the Graham factors are ordinarily committed to the discretion of the trial court. See Graham, 906 F.2d at 1401, 1416, 1418-19. However, under the unusual facts of this case, remanding on the basis of an alleged legal error would be pointless, because it would have been an abuse of discretion for the trial court to grant the motion under Rule 60(b)(2). Therefore, just as in part III supra, we express no opinion on the legal issues on which the trial court based its denial of Jefferson Bank's motion.
 
 B
 
 86
 We next consider whether the trial court abused its discretion in denying Jefferson Bank's motion to re-open the judgment under Fed.R.Civ.P. 60(b)(6), which authorizes district courts to vacate judgment for "any other reason justifying relief from the operation of the judgment." We conclude that it did not.
 
 
 87
 Rule 60(b)(6) "gives the court a 'grand reservoir of equitable power to do justice in a particular case.' " Pierce v. Cook & Co., 518 F.2d 720, 722 (10th Cir.1975), cert. denied, 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976) (quoting Radack v. Norwegian America Line Agency, Inc., 318 F.2d 538, 542 (2d Cir.1963)). Nevertheless, relief under the rule may not be premised on one of the specific grounds enumerated in Rule 60(b)(1)-(5). Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 n. 11, 108 S.Ct. 2194, 2204 n. 11, 100 L.Ed.2d 855 (1988). District courts may grant a Rule 60(b)(6) motion only in "extraordinary circumstances" and only when such action is necessary to accomplish justice. Id.
 
 
 88
 Jefferson Bank first argues that relief under Rule 60(b)(6) is warranted because even if its failure to present evidence of Mr. Wymer's theft of its funds was inexcusable, the initial judgment was manifestly unjust. It cites Good Luck Nursing Home, Inc. v. Harris, 636 F.2d 572, 577 (D.C.Cir.1980). Because we have rejected Jefferson Bank's claim that the judgment was manifestly unjust in declining to consider its arguments for the first time on appeal, we similarly find that the denial of this claim was not an abuse of discretion.
 
 
 89
 Jefferson Bank next cites Compton v. Alton S.S. Co., 608 F.2d 96, 107 (4th Cir.1979), for the proposition that relief under Rule 60(b)(6) is required where the judgment is based on an erroneous application of the law. Compton is not on point. That case concerned "a default judgment, entered as a result of a plain error of law apparent on the face of the pleadings themselves." Id. at 104. In contrast, the present case is not a default judgment; in light of the shaping of the issues below, the error of law was not in any way apparent from the pleadings; and in any event, because of the substantial authority cited by Iowa Trust in support of the views of the district court, the error of law was not "plain."
 
 
 90
 Jefferson Bank finally argues that relief was required under Rule 60(b)(6) because the denial of relief would cause it, a federally insured bank, to fail and would lead to wasteful litigation as Jefferson Bank and other victims of Mr. Wymer sought to use it as a precedent. We see no basis for concluding that the rejection of these arguments was an abuse of discretion. We AFFIRM the denial of Jefferson Bank's motion under Rule 60(b)(6).
 
 VII
 
 91
 We AFFIRM the imposition of a constructive trust in the amount of $42,843,614.13 in favor of Iowa Trust. We REVERSE the denial of statutory interest to Iowa Trust. We AFFIRM the denial of Jefferson Bank's Rule 60(b) motion. We REMAND for recalculation of pre-judgment interest.
 
 
 
 [1]
 The named plaintiff in this action, David J. Lyons, is the Iowa insurance commissioner. He was appointed as the receiver for Iowa Trust in the aftermath of this loss
 
 
 [2]
 In the proceedings at the preliminary injunction stage, Jefferson Bank argued that sequestering the funds was not necessary, because it would be able to satisfy any judgment that was subsequently entered. In its arguments, it freely admitted that it still had the funds it received from Mr. Wymer, and showed in which accounts they were located
 
 
 [3]
 The court ruled that Jefferson Bank was entitled to the balance of the escrow account, $330,000, plus the interest attributable thereto. Id
 
 
 [4]
 Mr. Wymer pleaded guilty to a Bank Fraud charge, which was described in the criminal information as follows:
 
 
 [26]
 As a further part of defendant WYMER's scheme to defraud, on or about February 12, 1990, defendant WYMER purchased 20 percent of the stock of Jefferson Bank and Trust in his own name, and assisted another ... representative [of a company he controlled] in purchasing 4 percent of Jefferson Bank and Trust stock, for a combined total purchase price of approximately $1.7 million. Defendant WYMER obtained the funds for these stock purchases without authorization from the City of Hemet. Defendant WYMER thereafter caused the other ... representative [of his companies] to become a member of the Board of Directors of Jefferson Bank and Trust
 
 
 [27]
 Beginning in or about December 1989 and continuing until in or about December 1991, ... defendant WYMER and others ... knowingly executed and attempted to execute a scheme to defraud Jefferson Bank and Trust, a federally insured financial institution, ... by means of false and fraudulent pretenses, representations and promises, by misappropriating and diverting approximately $40 million that Jefferson Bank and Trust had entrusted to the management of [his companies], in their capacity as registered investment advisers, for investment in government securities
 (Appellant's 2d Supp.App. at 28-29.) In addition, the RICO count to which Mr. Wymer plead guilty included the following specifics:
 In or about mid-October 1991, the SEC made inquiries about the status of accounts maintained on behalf of the City of Marshalltown. Thereafter, defendant WYMER began a series of sophisticated securities and financial transactions designed to obstruct and impede the investigation being conducted by the SEC and to cover-up the fraudulent activities of the racketeering enterprise. Defendant WYMER's efforts to impede and obstruct the SEC investigation and to cover-up criminal activities included ... the following:
 ....
 Between on or about November 25, 1991 and on or about November 26, 1991, defendant WYMER defrauded victim Iowa Trust out of approximately $68 million in Treasury notes by convincing a representative of the Banker's Trust of Iowa to deliver the Treasury notes to [one of defendant WYMER's companies] without receiving any payment for the notes. Defendant WYMER then sold those Treasury notes to [First Interstate Bank of] Denver and diverted the proceeds from the sale to other client accounts that he had previously depleted.
 (Id. at 21-22.)
 Mr. Wymer made the following statements in his plea allocution:
 One of the clients from which I diverted funds over the period of time was the Jefferson Bank and Trust.... Between the end of 1989 and December of 1991, I diverted a total of approximately $39 million from Jefferson Bank and Trust[ ].... I did this without the knowledge of anyone at the bank. My colleagues and I prepared false statements and other documents to conceal these diversions from the bank....
 ....
 In the fall of 1991, the [SEC] began an investigation.... In the course of this investigation I engaged in a number of financial transactions in an attempt to hide the fraud from the SEC....
 In addition, I engaged in several securities transactions that were designed to cover up some of the losses in client accounts.
 (Id. at 59-60.)
 
 
 [5]
 The consolidation of the appeal from the Rule 60(b) motion with the appeal from the merits moots Jefferson Bank's motion for this court to take judicial notice of Mr. Wymer's guilty plea
 
 
 [6]
 After the briefs were filed, but before oral argument, Jefferson Bank filed a suggestion that the Chapter 7 filing by Mr. Wymer's companies deprived this court of subject matter jurisdiction. After reviewing Jefferson Bank's arguments and independently researching this issue, we find no plausible basis for concluding that subject matter jurisdiction is absent in this case
 
 
 [7]
 We could, with equal effect, phrase the inadequate preservation of these issues in terms of the ambiguity with which they were raised. See supra part II(B)(2)(a). Similarly, even if they were adequately raised, they were neither timely pursued nor ruled upon in the district court during the trial. See supra part II(B)(2)(b)
 
 
 [8]
 In support of its arguments on the merits, Jefferson Bank included several documents in the appellate record which, it claims, make clear the extent of its losses to Mr. Wymer's fraud. Iowa Trust strenuously argues that these documents should be stricken from the appellate record because they were not properly presented to the trial court. Because we do not reach the merits of this argument, these documents are not relevant to our decision. We therefore need not resolve this procedural dispute
 
 
 [9]
 The trial court found that Iowa Trust had failed to prove actual profits. Lyons II, 793 F.2d at 987
 In its brief, Iowa Trust only appeals the denial of pre-judgment interest beginning with the filing of the complaint on December 27, 1991. Accordingly, Iowa Trust has waived all claim to pre-judgment interest prior to that date.
 
 
 [10]
 While this document was not included in the record on appeal, we exercised our discretion under Fed.R.App.P. 10(e) to direct that this document be transmitted to supplement the record before us