**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 17 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

KING AIRWAY COMPANY, a joint
venture; OSPREY DEVELOPMENT
CORPORATION, as successor-in-interest
to Osprey, Inc.; KING COAL
INVESTMENT COMPANY, a Colorado
limited partnership; AIRWAY
INVESTMENT COMPANY, a Colorado
limited partnership,

     Plaintiffs,

        v.

ROUTT COUNTY, COLORADO,
PUBLIC TRUSTEE OF,

     Defendant,

       and

NEW WEST FEDERAL SAVINGS &
LOAN ASSOCIATION, as successor-in-
interest to American Savings and Loan
Association, a California corporation,

     Defendant-Counter-Claimant-
     Appellee,

        v.

REID ROSENTHAL,

     Counter-Defendant-Appellant.

No. 95-1315
(D.C. No. 85-M-1447)
(D. Colo.)



## ORDER AND JUDGMENT[*]

Before SEYMOUR, Chief Circuit Judge, HENRY, and BRISCOE, Circuit Judges.

Reid L. Rosenthal appeals the district court's denial of his Fed. R. Civ. P. 60(b)(6) motion for relief from judgment in favor of New West Federal Savings & Loan Association and the court's entry of summary judgment in favor of New West. We reverse and remand.

## I.

Plaintiffs King Airway Company, Osprey Development Corporation, King Coal Investment Company, and Airway Investment Company (the Borrowing Companies) originally filed this action against American Savings & Loan Association on April 19, 1985, in Colorado state court, alleging American Savings had failed to adequately fund and administer a $2.3 million real estate development loan. American Savings removed the case to federal district court based upon diversity of citizenship, and then filed a counterclaim against the Borrowing Companies and Rosenthal, who was a real estate developer and chief executive officer of Osprey. In its counterclaim, American Savings sought to recover the amount owing on the loan by the Borrowing Companies and Rosenthal.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

The parties eventually settled the lawsuit by stipulation dated May 1, 1986. The stipulation provided that the Borrowing Companies would pay approximately $1.4 million to American Savings in full satisfaction of the dispute. If that amount was not timely paid, the stipulation allowed American Savings to obtain judgments against the Borrowing Companies and Rosenthal for specified amounts. The stipulation was approved by the district court on May 2, 1986. The stipulation was amended on January 7, 1988, because the Borrowing Companies had failed to tender the agreed amount. The amendment allowed American Savings to foreclose on the subject real property and provided that American Savings would obtain judgments against the Borrowing Companies and Rosenthal in specified amounts ($600,000 and $250,000) on or after January 1, 1991. The amendment further allowed the Borrowing Companies and Rosenthal to retire the judgments at discounts prior to that date. If the judgments were not retired prior to January 1, 1991, the parties stipulated the specified judgments would be entered.

Although the record on appeal provides little detail, American Savings apparently experienced financial difficulties in the late 1980's. On September 5, 1988, the Federal Home Loan Bank Board (FHLBB) adopted a resolution appointing Federal Savings and Loan Insurance Corporation (FSLIC) as receiver for American Savings and providing that all of American Savings' assets pass to FSLIC. On that same date, the FHLBB authorized formation of American Savings, a Federal Savings and Loan Association (Federal American). The following day, FSLIC, as receiver for American Savings, and Federal American executed an agreement that assigned substantially all of American Savings' assets and liabilities to Federal American.

On December 27-28, 1988, a series of transactions took place involving the assets formerly held by American Savings. It appears that on December 27, 1988, the FHLBB adopted a resolution appointing FSLIC as receiver for Federal American, and authorizing formation of two new federally chartered associations, American Savings Bank, F.A. (ASB), and New West. On December 28, 1988, FSLIC, ASB, and New West allegedly entered into an acquisition agreement that transferred most of the assets and liabilities of FSLIC, as receiver for Federal American, to either ASB or New West. According to an affidavit submitted by New West, the result of these alleged arrangements was that, subsequent to December 28, 1988, New West held any claim or judgment against Rosenthal previously held by American, Federal American, or ASB.

By July 9, 1992, the Borrowing Companies and Rosenthal had failed to retire the judgment amounts set forth in the amended stipulation. New West requested that the district court enter judgment against the Borrowing Companies and Rosenthal in accordance with the amended stipulation. The court issued a show cause order on December 22, 1992, to the Borrowing Companies and Rosenthal. There was no response to the order and, on January 28, 1993, the court entered judgment in favor of New West against the Borrowing Companies in the amount of $600,000 plus prejudgment interest and against Rosenthal in the amount of $250,000 plus prejudgment interest.

On February 10, 1994, Rosenthal filed a Fed. R. Civ. P. 60(b)(6) motion for relief from judgment, alleging that in May 1991 he was involved in a Colorado state court action filed by Resolution Trust Corporation (RTC), as conservator of Topeka Savings, a federally chartered savings and loan institution. According to Rosenthal, he entered into a settlement agreement with RTC which released him from "all claims, known or

unknown, which related to or arose 'out of . . . Rosenthal's dealings with RTC.'" Appellant's append. I at 41. Rosenthal further alleged a Colorado state court construed the RTC agreement on January 28, 1994, as releasing him from all claims RTC may have had against him. Rosenthal alleged "all rights of [American Savings] arising under the 1986 Stipulation were held by the RTC in May of 1991, when Mr. Rosenthal was released by the RTC from all claims." Id. Rosenthal argued the RTC agreement prohibited the federal district court from entering judgment against him and in favor of New West, and that the state court's order in the Topeka Savings litigation was binding upon the federal district court and New West.

Rosenthal served several discovery requests on New West on March 31, 1994, including a request for documents and a notice of deposition. According to Rosenthal, New West never responded to these requests and did not make anyone available for the requested deposition.

New West moved for summary judgment on February 13, 1995, arguing Rosenthal's 60(b)(6) motion could be resolved as a matter of law because the RTC agreement covered only claims arising out of the Topeka Savings case. New West also filed a motion for protective order staying discovery pending resolution of its motion for summary judgment. In his response to the motion for summary judgment, Rosenthal argued (1) New West had failed to demonstrate it was the successor to American Savings' claims against him; (2) New West was controlled by the FSLIC Resolution Fund (FRF); (3) New West was an "accounting device" with no separate legal existence; (4) the FRF was managed by FDIC on behalf of RTC; (5) any monies recovered by New West would

be placed in the FRF and would in turn benefit RTC; and (6) the RTC agreement barred New West's claims against Rosenthal.

On March 10, 1995, Rosenthal filed a motion to compel discovery, asking that the court order New West to produce various documents demonstrating how it became successor-in-interest to the assets of American Savings and outlining its relationship with RTC and FRF. On April 26, 1995, Rosenthal filed an affidavit pursuant to Fed. R. Civ. P. 56(f) for additional discovery on issues related to New West's motion for summary judgment. In particular, he asked for discovery as to (1) "[t]he ultimate beneficiary of any recovery by New West on any of the claims against Rosenthal"; (2) "[w]ho or what really owns the claims against Rosenthal"; (3) "[t]he nature of the legal 'existence' (if any) of New West"; and (4) "[t]he precise nature of the relationships, contractual and otherwise, between New West and FSLIC, FSLIC's successor (FRF), and RTC." Appellant's append. 3 at 616-17.

At the hearing on the motion for summary judgment on June 29, 1995, the court rejected Rosenthal's collateral estoppel argument, concluded as a matter of law that the RTC agreement did not release Rosenthal, and held that New West had proven the validity of its claim against Rosenthal. The court issued a one-page order outlining its rulings that same day. Rosenthal moved for reconsideration on July 13, 1995, which was denied on April 15, 1996.

II.

Rosenthal contends the district court erred in denying his motion for relief from judgment, arguing (1) the court failed to give preclusive effect to the earlier Colorado state court judgment entered in his favor; (2) the court ignored the fact that genuine issues

of material fact existed concerning New West's financial interest in pursuing him; (3) New West failed to establish, as a matter of undisputed fact, that it was the real party in interest; and (4) the court improperly refused to allow discovery to rebut New West's summary judgment motion.

We normally review denial of a 60(b) motion for an abuse of discretion. Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 727 (10th Cir. 1993). But where a district court permits the parties to engage in discovery and then "base[s] its denial . . . not on discretionary factors, but rather on . . . conclusions of law," as it did in this case, we apply a de novo standard of review. Id. "'A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law.'" Id. (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990)). In the context of this case, because the district court and the parties treated the pending motion as one for summary judgment, we shall do so as well. In so doing, we must decide "whether the evidence . . . is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, 477 U.S. 242, 251-52 (1986). Summary judgment is proper if, viewing the record in the light most favorable to the nonmovant, there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); United States v. City and County of Denver, 100 F.3d 1509, 1512 (10th Cir. 1996).

Before directly addressing Rosenthal's collateral estoppel argument, it is necessary to briefly review the history and relationship of the FSLIC, the RTC, the FDIC, and the FRF. Prior to August 9, 1989, FSLIC was a corporate body and agency of the United States under the control of FHLBB. FSLIC was responsible for insuring depository accounts of eligible financial institutions (apparently including American Savings), and

also acted as conservator and/or receiver for failed financial institutions when necessary. On August 9, 1989, Congress passed the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), Pub. L. 101-73, 103 Stat. 183. FIRREA abolished the FSLIC, created the FRF, and placed most of the assets and liabilities of FSLIC in the FRF. 12 U.S.C. § 1821a. The FRF was placed under the control of FDIC. Finally (for our purposes), FIRREA created the RTC and placed it under the control of FDIC. 12 U.S.C. § 1441a(b). The RTC operated under limited authority solely to resolve FSLIC-insured institutions declared insolvent between January 1, 1989, and July 1, 1995. 12 U.S.C. § 1441a(b)(3). It was funded separately by the Resolution Funding Corporation. 12 U.S.C. § 1441b(a). On December 31, 1995, the RTC dissolved and FDIC took over its remaining responsibilities. 12 U.S.C. § 1441a(m).

Turning now to Rosenthal's collateral estoppel argument, we note there is no evidence indicating RTC ever owned or otherwise held the claim against Rosenthal for breaching the amended stipulation with American Savings. In fact, RTC was not in existence at the time of the transfer of assets from American Savings to Federal American in September 1988 or at the time Federal American's assets were transferred to other entities in December 1988. See, e.g., Resolution Trust Corp. v. Starkey, 41 F.3d 1018, 1021 (5th Cir. 1995) (noting RTC created on August 9, 1989). Although Rosenthal attempts to create a connection with RTC by arguing RTC had some administrative involvement with New West and would indirectly benefit from any recovery New West made on the claim, these arguments fail to demonstrate RTC had any specific interest in the claim (i.e., that RTC ever owned the claim). Accordingly, we conclude the RTC agreement does not encompass the claim at issue here and reject Rosenthal's collateral

estoppel argument.  See generally Maryland Cas. Co. v. Messina, 874 P.2d 1058, 1061 (Colo. 1994) (outlining requirements for establishing collateral estoppel).[1]

The closer question is whether New West presented sufficient evidence to allow the district court to conclude, as a matter of law, that it was the real party in interest. Under Colorado law, "[t]he real party in interest is the party who, by virtue of the substantive law, has the right to invoke the aid of the court to vindicate the legal interest in question." Steiger v. Burroughs, 878 P.2d 131, 135 (Colo. App. 1994).  Here, New West submitted the affidavit of Kathleen Malone, assistant corporate secretary for New West, in an effort to demonstrate it was the real party in interest.  Malone generally alleged New West was the owner of the claim against Rosenthal.  Notably, however, the affidavit did not trace the specific path of the claim from American Savings to New West, nor did New West submit sufficient documentation to support Malone's general allegations.  More troubling is the fact that some of the evidence in the record on appeal appears to controvert certain of Malone's statements.  In particular, there is evidence in the record indicating two entities not mentioned in Malone's affidavit (C.B. Savings and Loan Association and American Real Estate Group) received some of Federal American's assets.  In light of these discrepancies, we conclude the district court erred in entering summary judgment in favor of New West when there remains a genuine issue of material fact as to whether New West was in fact the owner of the claim against Rosenthal at the time default judgment was entered.

---

[1] Although Rosenthal contends additional discovery is needed on the collateral estoppel issue, we disagree.  Other than mere speculation and tenuous theories about RTC's interest in the claim at issue, Rosenthal has failed to identify any evidence he could obtain that would demonstrate a direct RTC interest in the instant claim.

We also conclude Rosenthal should have been given the opportunity to engage in limited discovery on the real party in interest question prior to the ruling on New West's summary judgment motion. Although the district court did not expressly address Rosenthal's Rule 56(f) request for additional discovery, it effectively denied that request by granting New West's motion for summary judgment. We therefore review the court's denial for abuse of discretion. International Surplus Lines Ins. Co. v. Wyoming Coal Refining Systems, 52 F.3d 901, 904 (10th Cir. 1995).

The Supreme Court has suggested summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition. See Celotex Corp. v. Catrett, 477 U.S. 317, 326 n.6 (1986); Anderson, 477 U.S. at 250 n.5. Similarly, it has been suggested that, because the purpose of Rule 56(f) "is to provide an additional safeguard against an improvident or premature grant of summary judgment," the rule "should be applied with a spirit of liberality." 10A Charles A. Wright et al., Federal Practice and Procedure: Civil 2d § 2740, at 532 (2d ed. 1983). Here, Rosenthal complied with 56(f) by filing an affidavit explaining why he could not controvert specific facts in New West's motion for summary judgment and outlining evidence he needed to do so. Although some of his discovery requests were overly broad, we conclude Rosenthal should have been allowed to obtain evidence (either through document requests or depositions) to verify or controvert New West's assertions that it owned the claim against him. Because he was denied such discovery, we conclude the district court abused its discretion.

III.

For the reasons stated, we reverse the judgment of the district court and remand for further proceedings on Rosenthal's motion for relief from judgment to determine whether Rosenthal can meet his burden of showing that New West was not the real party in interest at the time the default judgment was entered.  Although Rosenthal should be allowed to engage in additional discovery on this narrow issue, we encourage the court to exercise its authority to strictly limit the scope of Rosenthal's discovery requests.  See 10A Wright, supra, § 2740, at 539 (recognizing court's authority to limit scope of requested discovery under Rule 56(f)).

REVERSED and REMANDED for further proceedings consistent with this order.


Entered for the Court

Mary Beck Briscoe
Circuit Judge