FILED
United States Court of Appeals
Tenth Circuit

December 21, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FREDERICK T. ELDER,

      Plaintiff - Appellant,

v.

J. DENNIS HERLOCKER,

      Defendant - Appellee.

No. 09-3210
(D. Ct. No. 6:08-CV-01407-JTM-DWB)
(D. Kan)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **EBEL**, and **HARTZ**, Circuit Judges.

---

Plaintiff-appellant Frederick T. Elder appeals from an order of summary judgment

in favor of the defendant in a legal malpractice action filed against his former attorney J.

Dennis Herlocker.  The district court held that the action was barred by the statute of

limitations.  We take jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I.  BACKGROUND

The material facts are not in dispute.  In 1984, Dr. Gale Elder deeded real property

to his sons, Frederick and John Elder, in joint tenancy, but reserved a life estate in the

property.  In 1999, the sons were not getting along, and Dr. Elder hired Mr. Herlocker to

---

[*]This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

prepare a new estate plan giving them separate real properties, rather than an undivided interest. Mr. Herlocker sent letters asking the two to execute quitclaim deeds returning the property to their father. Frederick (hereinafter "Mr. Elder") did so. He also sent a letter to Mr. Herlocker, stating that he had not obtained an "independent legal or tax opinion" and was relying on Mr. Herlocker "for all technical, legal, and tax aspects regarding this transaction; including, but not limited to, the aspect of accurate/proper land description." He specifically asked for a written opinion setting forth the tax consequences of the quitclaim deed transfer.

On March 2, 2004, Dr. Elder died. One week later, John Elder filed a petition for probate of Dr. Elder's will. At this time, Mr. Elder learned that his father's will provided that he would receive only $150. He objected to the probate of the will, contending that Dr. Elder breached a contract to devise him the real property, and that the will was the product of undue influence by his brother John.

On April 28, 2005, Mr. Herlocker was deposed in the probate proceedings. He testified that he had an attorney-client relationship with Mr. Elder limited to providing Mr. Elder with tax advice concerning the quitclaim transfer of the real property back to Dr. Elder. Mr. Herlocker further testified that he acted under that limited attorney-client relationship with the approval of Dr. Elder. Mr. Herlocker stated that he had no duty to tell Mr. Elder that he might be giving up a gift when he deeded the property back to Dr. Elder.

Mr. Elder hired counsel to investigate whether Mr. Herlocker committed legal

malpractice. On June 6, 2005, Mr. Elder's attorney sent Mr. Herlocker a letter stating that: Mr. Elder's loss was a result of Mr. Herlocker's legal advice; Mr. Herlocker failed to inform Mr. Elder that by executing the quitclaim deed he surrendered his right to the property; Mr. Herlocker failed to notify Mr. Elder of the conflict of interest or advise him to seek independent counsel; and Mr. Elder might seek legal action for loss incurred due to Mr. Herlocker's legal services. After Mr. Herlocker responded to that letter, Mr. Elder's counsel sent him another letter on June 29, suggesting that Mr. Herlocker refer the matter to his malpractice carrier.

On January 15, 2008, the probate court denied Mr. Elder's claim for recovery of the real property. On December 24, 2008, Mr. Elder filed his complaint in this action, alleging that he had relied on Mr. Herlocker to provide legal advice and that Mr. Herlocker was negligent and breached his obligations because he failed to: (1) advise Mr. Elder of a potential conflict of interest between his clients, Mr. Elder and Dr. Elder, concerning the transfer of the real property back to Dr. Elder; (2) inform Mr. Elder of the legal consequences of transferring the property without providing an assurance that the property or an equivalent value would be provided for in future estate plans; (3) recommend that Mr. Elder obtain an assurance that the property or an equivalent value would be returned; (4) limit his representation of Mr. Elder to only tax issues; and (5) suggest that Mr. Elder obtain alternative legal advice concerning the effect of the transfer of the real property.

Mr. Herlocker moved for summary judgment, asserting that the action was barred

by the two-year statute of limitations set forth in Kan. Stat. Ann. § 60-513(a).  The district

court agreed.  Relying on *Dearborn Animal Clinic, P.A. v. Wilson*, 806 P.2d 997,

1003–07 (Kan. 1991) and *Newland v. First Nat'l Bank in Goodland*, No. 91-1443-PFK,

1994 WL 476330, at *6 (D. Kan. Aug. 24, 1994), the court decided that the statute of

limitations began to run when Mr. Elder's legal malpractice claim was reasonably

ascertainable, not when the probate litigation ended.  The court determined that the claim

was reasonably ascertainable in mid-2005 when Mr. Herlocker, at his deposition, denied

having a general attorney-client relationship with Mr. Elder or the existence of a contract

between Dr. Elder and Mr. Elder to devise property to him.  Additionally, the court

determined that the letters sent by Mr. Elder's counsel to Mr. Herlocker showed that it

was ascertainable in June 2005 that Mr. Elder had a legal malpractice claim against Mr.

Herlocker.  Mr. Elder now appeals.

## II.  DISCUSSION

"We review de novo the district court's grant of summary judgment." *Cahill v.

Am. Family Mut. Ins. Co.*, 610 F.3d 1235, 1238 (10th Cir. 2010).  Summary judgment is

appropriate "if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the movant

is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  We also review de

novo the district court's interpretation of Kansas law.  *Hutton Contracting Co. v. City of

Coffeyville*, 487 F.3d 772, 778 (10th Cir. 2007).

The parties do not dispute that the instant malpractice action is governed by the

- 4 -

two-year statute of limitations for claims arising in tort. *See* Kan. Stat. Ann. §
60-513(a)(4); *Pancake House, Inc. v. Redmond*, 716 P.2d 575, 578 (Kan. 1986) ("Where
the essential claim of the action is a breach of a duty imposed by law upon the
relationship of attorney/client and not of the contract itself, the action is in tort.").  Rather,
the parties debate when the cause of action accrued and the statute of limitations began
running.  Mr. Elder contends that the limitations period did not begin to run until the
related probate litigation was completed in 2008.  Mr. Herlocker, however, maintains that
the limitations period began running in 2005.

As a general rule, Kansas law provides that the statute of limitations for a legal
malpractice claim does not begin to run until any underlying litigation which may be
determinative of the alleged negligence of the attorney is resolved.  *Dearborn Animal
Clinic*, 806 P.2d at 1006; *Pizel v. Zuspann*, 795 P.2d 42, 56 (Kan. 1990).  The Kansas
Supreme Court has ruled, however, that this general principle does not apply, even though
underlying litigation has not been resolved, "[i]f it is clear that the plaintiff . . .  has
incurred injury and if it is reasonably ascertainable that such injury was the result" of the
defendant's negligence.  *Dearborn Animal Clinic*, 806 P.2d at 1006.  In such cases, "the
statute begins to run at the time that it is reasonably ascertainable that the injury was
caused by the attorney's malpractice." *Id.*

Mr. Elder maintains that it was error for the district court to apply the *Dearborn*
exception.  He contends that he first suffered a compensable injury when the probate
court denied his claim, and that until then he had only a "potential" injury.  We disagree.

Mr. Elder's argument is based upon the assumption that his injury was contingent on the outcome of the probate court litigation. It was not. In June 2005, his counsel indicated in a letter to Mr. Herlocker that Mr. Elder had already suffered a loss. The letter stated,

> as a direct result of your advice, Mr. Elder surrendered an interest in land that he owned by way of a previously completed gift from his father, and he received nothing in return. . . . Mr. Elder's loss was a direct result of deficient and misleading legal advice provided by you . . . .

Moreover, the probate court expressly found that both prongs of Mr. Elder's challenge to his father's will were brought in bad faith and "without a reasonable basis in fact or law." He therefore cannot rely on the probate action to delay the accrual of his legal malpractice claim. *See id.* (noting that it is the presence of a "good faith dispute" which supports the general rule that a legal malpractice claim does not accrue until the underlying litigation is finally determined). Even if Mr. Elder's probate claims had been in good faith, he suffered injury when he had to retain counsel to challenge the will as the product of Mr. Herlocker's legal malpractice. *See id.* at 1006–07 (noting that the cost to retain new counsel constitutes an injury and that the statute of limitations begins running when it is reasonably ascertainable that such an injury is caused by the prior attorney's alleged negligence).[1] Accordingly, Mr. Elder suffered a compensable injury in 2005.

---

[1] Mr. Elder argues that if he had been successful in probate court, he would have recovered all of his attorneys fees pursuant to Kan. Stat. Ann. § 59-1504, leaving him with no damages to support a legal malpractice claim against Mr. Herlocker. The district court, however, did not have this argument before it when ruling on Mr. Herlocker's motion for summary judgment; therefore, we will not consider it now. *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir. 1993) ("'[I]t is the general rule, of course,

It was also reasonably ascertainable no later than June 2005 that Mr. Elder's injury was the result of Mr. Herlocker's alleged negligence. In April 2005, Mr. Herlocker testified in his deposition that he had an attorney-client relationship with Mr. Elder but had not informed Mr. Elder that he might be giving up a gift when he deeded the property back to Dr. Elder. In June 2005, Mr. Elder's counsel sent Mr. Herlocker a letter alleging that Mr. Elder's loss of the property was a result of Mr. Herlocker's legal advice. Later that month, Mr. Elder's counsel sent Mr. Herlocker another letter, this time suggesting that Mr. Herlocker refer the matter to his malpractice carrier. Therefore, it was reasonably ascertainable by June 2005 that Mr. Elder's injury was attributable to Mr. Herlocker's alleged negligence.

Finally, Mr. Elder contends that the district court's analysis is flawed because it would required him "to maintain inconsistent positions in the underlying probate litigation and the legal malpractice action," potentially undermining both actions.[2] This argument is unavailing. The *Dearborn* court recognized this point but nevertheless held that the statute of limitations may begin running before the underlying action is finally resolved. *See id.* at 1005–06 (discussing *U.S. Nat'l Bank v. Davies*, 548 P.2d 966 (Ore. 1976)). Moreover, we note that Mr. Elder is not entitled to shield himself using legal

---

that a federal appellate court does not consider an issue not passed upon below.'" (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)).

[2]Mr. Elder argues that he would have had to claim in the probate proceedings that he was entitled to the property or its cash equivalent, while at the same time claiming in the malpractice action that he did not have a legal right to anything.

proceedings brought in bad faith.

Accordingly, we hold that the district court correctly determined that Mr. Elder's malpractice claim accrued no later than June 2005. As such, Mr. Elder had until June 2007 to file his claim. He did not, however, file this action until December 2008. Therefore, the district court properly granted Mr. Herlocker summary judgment based on Kansas's statute of limitations.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order granting summary judgment in favor of Mr. Herlocker.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge